77 P.2d 180

**HOOD v. BOND.**

No. 4347.

Supreme Court of New Mexico.

Feb. 28, 1938.

Holt & Holt, of Las Cruces, and George A. Shipley, of Alamogordo, for appellant.

J. L. Lawson, of Alamogordo, for appellee.

BICKLEY, Justice.

Plaintiff (appellant) sued to quiet title. Defendant resisted, asserting title in himself, praying for a decree quieting his title. Plaintiff answered defendant's cross-complaint with denials and pleaded affirmatively certain facts. Defendant demurred to the answer on the ground that the facts pleaded are insufficient in law and do not constitute a defense to the answer and claim of title of defendant. The court sustained the demurrer. Plaintiff refused to plead further and his cause was dismissed. In consequence the record discloses the following admitted facts from which to test the correctness of the conclusion of the trial judge that defendant has a good tax title:

The case is governed by chapter 27, L. 1934, Sp.Sess.; the property was sold for taxes on December 7, 1934; the tax sale certificate had affixed to it the date March 15, 1935; on March 11, 1937, the county treasurer issued a tax deed to defendant; on March 11, 1937, after the issuance of the tax deed, plaintiff made tender to the county treasurer for the purpose of re-

demption, which tender was refused for the assigned reason that a tax deed had theretofore been issued to defendant; this suit was filed on March 16, 1937; no other suit to test the validity of the acts of the tax officers was commenced by plaintiff; on April 5, 1937, another tax deed was issued to defendant; the plaintiff was on March 5, 1930, appointed as receiver of the assets of Arizona Lead & Copper Company, a corporation, and thereupon qualified as such, and became invested with the title to the assets of said corporation and was in possession thereof, including the property herein involved; the tax sale was to realize taxes delinquent for the years 1931, 1932, and 1933; no notice of the tax sale was mailed to or received by plaintiff in accordance with section 4, chapter 27, L. 1934, Sp.Sess.; no affidavit of compliance with the provisions of said section was made or filed by the county treasurer with the county clerk; no notice was mailed to or received by plaintiff from the county treasurer, in accordance with the provisions of section 16 of said statute, ninety days prior to the expiration of two years from the date of the delinquent tax sale, or at any time, that the property involved had been sold for delinquent taxes and that unless the property was redeemed within two years from the date of such sale a deed would be executed to the purchaser or his assigns; that no affidavit of compliance with the provisions of said section 16 was made out and filed by the county treasurer with the county clerk.

Plaintiff attacks the tax deed on the ground of alleged jurisdictional irregularities and defects in the proceedings leading up to the issuance of the tax deed. These consist in the main in the failure of the treasurer to comply fully with the provisions of section 4 of the act relative to notice of sale of real property for delinquent taxes and a failure of the treasurer to comply with the provisions of section 16 relative to notice to delinquent taxpayers and mortgagees that unless he redeemed the property within two years from the date of sale a deed would be executed to the purchaser at the tax sale or his assigns. It is not alleged that the treasurer did not post and publish some of the notices required by section 4.

It is to be observed that said sections 4 and 16 contain the following curative provisions:

"Sec. 4. * * * The failure of any taxpayer or mortgagee to receive such notice, however, shall not invalidate any sale for delinquent taxes."

"Sec. 16. * * * But the failure of any taxpayer to receive the same [notice] shall not affect or invalidate the deed to be executed to any property upon the expiration of two years from the date of sale thereof."

Appellant concedes the devastating force of these curative provisions so far as they apply to the failure of the taxpayer to "receive" the notices is concerned, but says: "It must be observed that such provisions do not obviate or ex-

cuse the jurisdictional mandatory requirements for the mailing of such notices, or the execution by the treasurer of the prescribed affidavit of compliance and the filing and recording thereof." Appellant argues that the provisions for the mailing of the notices are intended for the benefit of the taxpayer and to give such taxpayer additional chances to redeem the property. If this is so, and we do not doubt it, it is the *receiving* the notices which affords the delinquent taxpayer additional chances to avoid the effects of his delinquency and not deposit thereof in the mail or filing affidavit of such mailing. These are directions of the Legislature that ought to be complied with. But the curative provisions say the failure of the taxpayer to receive the notices shall not invalidate the tax deed thereafter to be issued. It is difficult to see what effect failure to mail the notices will have on the validity of the tax deed if the failure to "receive" them is not jurisdictional. We suspect that the reason the Legislature did not specifically mention failure to mail or failure to make proof of mailing in the curative provisions is that the Legislature probably relied upon the common understanding of a presumption that if a notice is mailed it will be received. 22 C.J. 96. It is further to be noted that in section 21, which refers to the power of county treasurers to sell real property "after compliance with the conditions precedent as to posting and publication of the notices of sale prescribed in this Act," no mention is made of mailing

notice as being among the conditions precedent. Furthermore, section 24 of the act in question provides: "In all controversies and suits involving title to property, claimed and sold under and by virtue of a tax deed executed substantially as aforesaid by the treasurer, the party claiming adverse title to that conveyed by such deed shall be required to prove, in order to defeat the said title, either that the said property was not subject to taxation for the year or years named in the deed, or *that the taxes had been paid before sale,* or that the property had been redeemed from the sale according to the provisions of this Act." This is quite similar to some of the provisions of section 435, chapter 133, L. 1921, which were before this court for construction many times. Comparing them and taking a comprehensive view of chapter 27, L. 1934, Sp.Sess., we conclude that it was the legislative intent to maintain the validity of tax deeds as against all irregularities and defects and strictly limit the defenses of the original owner to the "essentials of taxation" and to the matters referred to in section 24 of the act, a portion of which has been quoted. This view of the statute is fatal to appellant's position that the mailing of and proof of mailing of notices are "essentials of taxation." The failure to give the notices did not deprive appellant of any defense recognized by the law. See Baker v. Johnson, 35 N.M. 293, 295 P. 421. Appellant argues that decisions construing chapter 133, L. 1921, are distinguishable, because under the earlier act section

442 thereof stated that: "The tax sale certificate, when recorded, shall vest in the purchaser, * * * a complete legal title to the property described therein, subject to redemption as provided by law"; whereas section 9 of the now existing statute provides that: "The tax sale certificate shall vest in the purchaser, his heirs, successors, and assigns, or the state and its successors and assigns, as the case may be, subject to the right of redemption as provided in this Act, the *right* to a complete title to the property described therein."

■ The difference, if any, is unimportant in the case at bar. After the period of redemption expires the certificate of sale entitles the holder thereof to the possession of the property. By section 13 of the act it is provided: "Property sold at tax sale as provided in this act shall thereafter be assessed in the name of the former owner as shown by the Tax Rolls until the expiration of the period of redemption provided in this Act." An inference arises from the direction to assess the property in the name of the former owner until the expiration of the period of redemption that after expiration of such period the title of the former owner has been extinguished and resides in the purchaser at the tax sale for the purpose of assessment of taxes. In section 28 of the act it is provided that: "No purchaser of any land, town or city lot or other property for delinquent taxes, nor any person claiming under him, shall be entitled to any compensation in any form for any improvements which he shall make on such land, town or city lot or other property within two years *from the date of sale thereof*. Any such improvements which shall be made within the period of redemption prescribed herein, shall be at the risk of the certificate holder." (Emphasis ours.) The plain inference is that after the expiration of the period of redemption it will be safe for the purchaser to make improvements because he has title or at least right to title which cannot be defeated by the former owner.

■ The failure of the original owner to redeem deprives him of the right to make any attack on the title or right to title and possession, except those enumerated in section 24 of the act and the failure to observe the "essentials of taxation." The title or right to title of the holder is under such circumstances good enough to prevent the former owner from quieting his title and is a right which may ripen into title sufficient to withstand attacks by the former owner. We do not see how the former owner who has not redeemed and who has none of the defenses open to him under the circumstances is concerned with the efforts of the holder of the tax sale certificate to perfect his title or right to title in the manner provided by the statute. If the former owner and delinquent taxpayer has permitted his property to be sold at a tax sale and has failed to redeem it, the matter of further assurances of title to the holder of the tax sale certificate will be a matter between him and the state or county. It is further to be noted in

the case at bar that the plaintiff did not bring any action to test the validity of any of the proceedings or any irregularity or neglect of any kind of any officer having any duty to perform under the provisions of the act. It is provided by section 25 that any such actions which shall not be commenced within two years from the date of the sale shall be barred.

■ Appellant next contends that he was in time in his efforts to redeem and therefore the tax deed upon which appellee relies is invalid. If we correctly understand appellant's proposition it is this: The defendant by virtue of the tax sale certificate does not have title, but only "the right to a complete title," and complete title could only be obtained through the medium of a tax deed and that sections 9, 14, and 17 of the act, when properly construed together, show that the time for redemption is extended until after the expiration of two years from the *date* of the tax sale certificate until which time the holder thereof is not entitled to demand a tax deed, and then only when the property has not been redeemed. Plaintiff's contention will be better understood if we repeat and keep in mind the dates of the important events:

1. December 7, 1934. Property sold for taxes.

2. March 15, 1935. Date affixed by treasurer to the tax sale certificate.

3. March 11, 1937. Treasurer issued deed to appellee.

4. March 11, 1937. Appellant made tender of redemption money to treasurer shortly after deed was issued *(more* than two years after the date of sale but *less* than two years after date affixed to tax sale certificate).

5. April 5, 1937. Tax deed (second, and the one in this case attacked by appellant) was issued to appellee.

Appellant asserts, and we assume, that an offer to redeem timely made is tantamount to redemption. We assume also that the curative provisions of sections 24 and 25 do not prevent a property owner from making a successful attack upon a tax deed issued after the former owner has redeemed his property from a tax sale. We quote from appellant's argument:

"Section 452 of chapter 133, Laws of 1921, as amended by section 27, chapter 102, Laws of 1925, provided that at any time after the expiration of the term of two [three] years from the date of recording of the Tax Sale Certificate, where the property had not been redeemed, the holder might call for tax deed; BUT that Statute did not contain the distinction drawn by the 1934 Statute, supra, wherein and whereby the holder of the Certificate is expressly precluded from applying for deed until after the expiration of two years from the *date* of the Certificate, 'where the property has not been redeemed'; as set forth in section 17 of the act.

"In the 1921 Statute, as amended, the redemption period provision, and that for the procurement of tax deed, were in harmony;

whereas in the Statute at bar a clear distinction exists conclusively indicating the purpose and intent of the Legislature to afford the property owner the opportunity to redeem his property at any time after sale, until after the lapse of two years from the *date of the Certificate* evidencing such sale.

"This contention is strengthened by the further distinction that under the 1921 Law, possession of the recorded Tax Sale Certificate *vested in the holder complete legal title;* whereas under the 1934 Statute the Tax Sale Certificate merely vests the holder with the *right to a complete title,* subject to the right of redemption, obviously meaning the right of redemption as elsewhere provided in the Statute, towit, in sections 14 and 17, supra.

"Under the 1934 Statute, the Tax Sale Certificate itself does not vest the holder with a complete legal title; but merely with the 'right to a complete title', where the property has not been redeemed as provided in the Statute.

"If possible, effect must be given to the provisions of both sections of the Act."

Any surface in harmony disappears when we take a comprehensive survey of the whole act. Section 14 provides: "Property sold under the provisions of this Act may be redeemed * * * at any time before two years from the *date of the sale."* (Emphasis ours.)

Section 15 provides: "The county treasurer, upon application of the redemptioner and the payment of the amount required to redeem *as in the preceding section hereof provided,* * * * shall issue and deliver to the person redeeming * * * a certificate of redemption." (Emphasis ours.)

Section 16 requires the county treasurer to mail notice to the taxpayer "ninety days prior to the expiration of two years from date of sale of property * * * but the failure of any taxpayer to receive the same shall not affect or invalidate *the deed to be executed to any property upon the expiration of two years from the date of sale thereof."* (Emphasis ours.)

In section 23 it is provided: "In all cases where the tax sale certificate upon property is sold to the State of New Mexico and such certificate of sale has not been sold or assigned by the treasurer before the expiration of the period of redemption, the county treasurer shall *immediately* upon expiration of the redemption period execute a tax deed to the State of New Mexico." (Emphasis ours.) It thus appears the deed is issuable immediately after the expiration of two years after the *date of sale.*

Section 28 provides that the purchaser at the tax sale shall not be entitled to compensation for any improvements he shall make on the lands "within two years from *the date of sale thereof.* Any such improvements which shall be made within the period of redemption prescribed herein, shall be at the risk of the certificate holder." This is a reaffirmance of the intention of the Legislature expressed a number of times that the period of redemption shall be two years from the date of the sale. Looking

again at the language of section 17 "at any time after the expiration of two years from the date of the tax sale certificate, where the property has not been redeemed, * * the county treasurer shall issue * * * a tax deed," it appears that the inclusion of the word "certificate" after "tax sale" is what brings about the alleged inharmony. No one has been able to suggest any good reason for fixing the time of the issuance of the deed as two years after the date of the certificate unless the date of the certificate were coincident with the date of the sale. If the inclusion of the word "certificate" were not inadvertent, which we are inclined to believe, then the only reasonable explanation which has been suggested for its use is that the Legislature intended that tax sale certificates should be issued and dated on the day the sale took place. Sections 6 and 7 of the act lend some support to this. In section 6 it is provided that any person submitting a bid must pay the amount thereof in cash before the close of the sale on *the day such bid is made,* and if such payment shall not be made on *said day* the property shall be reoffered for sale the following day as if no bid therefor had been made. Section 7 provides: "Upon receiving the amount for which any real property shall be sold to any bidder therefor, the treasurer shall execute and deliver a certificate of sale," etc. It would seem that the duty to execute and deliver the certificate of sale upon receiving the amount of the bid means "forthwith." The form of the certificate of sale is set forth in section 7. It is very simple and doubtless would be as easy to fill out as it would be to give a receipt for the money paid by the purchaser on the day of the sale. It has been suggested that even if press of work kept the treasurer from immediately issuing all of the tax sale certificates reflecting the day's sales, the certificates should still be dated as of the day of the sale. It has also been suggested that if the matter were important harmony could be secured by application of the doctrine of "relation" or "relation back" so that the date of the sale would be regarded as the date of the certificate.

If there was nothing else in the act defining the period of redemption, then there would be force to the argument of appellant that the direction that "at any time after the expiration of two years from the date of the tax sale certificate, *where the property has not been redeemed * * ** [emphasis ours] the county treasurer shall issue * * * a tax deed" would indicate that the period of redemption was two years after the date affixed to the certificate. But as we have seen, there are positive and express declarations to the contrary, supported by frequent contrary inferences, and we are constrained to find appellant's argument unavailing. Reason and convenience seem to be against him. It would seem to be much more satisfactory that the period of redemption should expire at a definite time, such as two years after the sale, than that the period thereof should be rendered ununiform, enabling a county treasurer, through caprice or favoritism, to extend the period of redemption by withholding the issuance of tax sale certificates. These

considerations lend support to the view that the Legislature did not provide for two periods of redemption—one certain and the other indefinite. Assuming that the Legislature intended (which we doubt) that the tax deed shall not be issued and delivered to the holder of the tax sale certificate until the expiration of two years after the date affixed by the treasurer to the tax sale certificate, still in view of other provisions of the act, we would find no difficulty in construing section 17 to effectuate the intention of the Legislature as though it read: "At any time after the expiration of two years from the date of the tax sale certificate, where the property has not been redeemed *as provided for in preceding sections,* etc."

■ Whether the tax deed first issued in the case at bar was premature it is not necessary to decide. We agree with counsel for appellee that the power vested in the treasurer to execute a tax deed is not exhausted until a deed is made in compliance with law. See 61 C.J. p. 1333.

While there may be some conflict in the decisions, we seem to have taken this position in Witt v. Evans, 36 N.M. 365, 16 P.2d 60, 61, where it was said: "The issuance of a void deed would not be fatal to his title. He would still be in a position to demand a valid deed." We think this is so under the statute as it now stands, which vests in the holder of the tax sale certificate, subject to the right of redemption "the right to a complete title to the property described therein."

Appellant also assigns error as follows: "That the Trial Court erred in sustaining the Demurrer for the reason that the property involved was in *custodia legis* at the time of the attempted sale and at all times complained of herein, as shown by the pleadings." Appellee asserts that this point was not brought to the attention of the trial court and cannot be considered on appeal.

It is true that appellant alleged in his complaint: "That he is a resident of Otero county, New Mexico, and that he is the duly appointed, qualified and acting Receiver of the Arizona Lead and Copper Company, a corporation, pursuant to and under and by virtue of an Order of this Honorable Court, made and entered of record on, to-wit, March 6, 1930, in a certain cause then pending upon the Civil Docket of this Court, wherein one S. Armendarez was plaintiff and said Arizona Lead and Copper Company, a corporation, was defendant, numbered 2839 upon said Civil Docket." He also alleged that as receiver plaintiff is the owner and holder of the legal title to, and in possession of, the property herein involved and stated the origin of the record title, and in the answer to defendant's cross-complaint plaintiff repeated these allegations.

These allegations would not be inappropriate for the sole purpose of showing the nature of plaintiff's title. Further examination of the answer to defendant's cross-complaint discloses an allegation as to the failure of the treasurer to comply with the

statute as is more fully referred to heretofore; also allegations pertaining to the propositions which we have heretofore discussed relative to the timeliness of his tender of the redemption money. He also alleged: "That plaintiff has good reason to believe and does believe and therefore avers that had he received from the aforesaid county treasurer the aforesaid notice, contemplated and required by section 16, chapter 27, of the aforesaid statute, he could and would have been able, with the aid of this honorable Court to have provided the funds requisite for the redemption of the aforesaid property within the prescribed statutory period of time; but that the object and purpose of said statute was nullified through the aforesaid failure of the aforesaid county treasurer to give plaintiff the required notice; by reason whereof plaintiff will be deprived of the aforesaid property, title to which is vested in him as receiver, as aforesaid, without due process of law, as he is advised and believes, if defendant's pretended tax deed shall be held valid." But we do not find any allegations to the effect that the property was not subject to taxation on account of being in custodia legis during the three years the property was assessed for taxes and the taxes remained unpaid, and no allegation that any of said taxes had been paid, and no allegations were made as to why the property was not redeemed from the tax sale, except those heretofore quoted.

In Central Trust Co. v. Wabash, St. Louis & Pacific Railway Co., C.C., 26 F. 11, an application was made by the receiver of the Wabash Railway Company for an attachment against the collector of a county in Missouri, who had issued a warrant and seized an engine of the company, in the possession of the receiver. The application was denied, Judge Brewer saying: "It is not represented in the petition that the taxes are not just and legal, or that they are not due. * * * I think that in levying and collecting taxes the state is exercising its sovereign power, and that there should be no interference with its collection of those taxes in its prescribed and regular methods, even by a court having property in the possession of its receivers. * * * The mere fact that the receivers have no money on hand to pay the taxes is no excuse for stopping the process of the state for their collection." Judge Brewer's decision was cited with approval in Ex parte Chamberlain, C.C., 55 F. 704, wherein the court seemed to take the view, in cases where its possession of property through its receiver was sought to be vindicated as against the state's process to collect its taxes, that it would not inquire further than to determine whether the tax was legal.

The answer contains the further allegation that he acted on his opinion and information that he could redeem at any time within a period of two years after the date of the tax sale certificate. There is nothing to show that he asked the advice of the court, and there is nothing to disclose the contention now urged that because the property was in custodia legis the period of redemption would be extended until such time as some other person should claim the bene-

fit of a tax title to the land. We are inclined to agree with appellee that plaintiff's allegations did not invoke a ruling on the point raised by the sixteenth assignment of error quoted supra.

■■■ But if we assume that the point was ruled on by the trial court the plaintiff is not in a very favorable position. The principle relied upon by plaintiff that "the court appointing a receiver has power, and it is its duty, to protect from interference the property in its possession through its receiver," is undoubtedly correct. The broad principle that "property constructively in the custody of the court through its receiver is not subject to sale for delinquent taxes" is not of universal application. The basis of the application of this principle is that disposal of property in custodia legis must be with the court's sanction in order to be valid. Decisions in the adjudicated cases are not in harmony. Some decisions limit the application of the principle to the attempted seizure of personal property. Others seem to turn upon whether the receiver was in possession of funds with which to pay. Leaving to one side the cases involving the sale under the state law of property in the custody of federal courts through receivers or trustees in bankruptcy as perhaps being governed by special considerations, we think the Kentucky Court of Appeals in Metcalfe v. Commonwealth Land & Lumber Co.'s Receiver, 113 Ky. 751, 68 S.W. 1100, 24 Ky.Law Rep. 527, expresses a reasonable view. It was held in that case:

"The fact that a court of equity has ordered a receiver to take possession of property in litigation at the instance of one of the parties to the suit does not prevent its sale for taxes due the state, and the purchaser at such sale having obtained a deed may take possession without leave of the court, and without a suit therefor, if no one is in possession. * * *

."As the purchaser's tax deed imports prima facie a compliance with the statute by the assessing and collecting officers, the receiver, if he wishes to attack the sale for irregularities therein, must institute in the county where the property is situated such appropriate action as the parties to the litigation may care to institute and the court may approve."

The court said:

"The question is, was the receiver of the court in such possession of the property as prevented its sale by the sheriff for the taxes assessed against it, and as prevented the purchaser at that sale from taking possession of it, after the right of possession had attached, without his first having obtained the permission of the Jefferson circuit court? * * *

"Appellant's argument is that, having the right of possession, and prima facie the fee-simple title to the lot, he had the right of an owner to possess himself of his own, so long as he could do so without committing a breach of the peace, or, in this case, without committing some act which would be, and ought to be regarded as being, a contempt of the court in which the property

was in litigation between others than the purchaser. Courts appoint receivers over property in litigation at the instance of one of the parties to the suit, generally upon allegations that the other party in possession is so using the property that it will be destroyed, materially impaired, or removed beyond the jurisdiction of the court before the court can finally determine the rights of the litigants. The court has no concern in the controversy other or further than to preserve the status of the thing in dispute until it may regularly and in an orderly manner adjudicate the controversy. Such adjudication cannot affect either the title of others, not parties to the suit, nor can it affect liens of lienors not parties. The court's possession does not add to the title nor to the rights of the litigants in so far as third persons not parties are concerned. It must be equally manifest that the court's possession can detract nothing from the lien of the state for taxes assessed against the property. The sheriff is charged with these taxes, and is required to account for them. His sureties upon his bond are liable for them. If the litigants do not provide for their payment, there is no provision of law under which the sheriff may protect himself against the payment of these taxes to the state and to the county except for him to advertise and sell the property. If he has the right to advertise and sell, the person who bids for it has the right to buy; and, if his bid is accepted by the sheriff, necessarily he obtains all the right under the bid that the statutes intend to give. If the proccedings are regular, such purchaser acquires, in the language of the statute, the fee-simple title to the property. * * * It is said in High, Rec. 138: 'The appointment of a receiver over property which is subject to taxation in no manner affects or impairs a' lien upon the property for taxes.' It is the duty of the owner to pay the taxes when due; and if the disputants in the litigation, each claiming to be the owner or entitled to the property, should care to preserve it from sequestration for the taxes due upon it, they should see to it that they are paid. Whatever judgment the court may render in the premises would be subordinate to the right of the commonwealth to collect therefrom its taxes. It can serve no purpose of public policy for the court, because of the supposed involvement of its dignity, to aid taxpayers in avoiding or delaying the payment of those dues owing by them, and necessary for the carrying on of government. As there was nothing in the record to show but what the taxes had been regularly assessed in this case, and all steps antecedent to the sale were in strict conformity to the statute, appellant's deed importing prima facie a compliance with the statutes by the assessing and collecting officers, the court should not have required appellant to surrender the possession of the property in dispute. It should have left the receiver to such action as was afforded him by law in the courts of the county where the property was situated, as the parties to the litigation may care to institute, and the court may approve, to test any irregularities leading up to the sale, if there were any."

However, we do not find it necessary to pursue the matter to a conclusion as to what is the correct rule, since we are relieved thereof by considerations appearing in the case at bar which would make it inappropriate to apply a rule that would be inhospitable to the enforcement of our tax laws. It appears from the plaintiff's complaint and his answer to defendant's cross-complaint that the plaintiff receiver is an officer of the court, appointed, qualified, and acting in a case pending in the same court which tried the case at bar. In other words, the court that has custody of the property involved, through its receiver (the plaintiff), is the same court that refused to sustain plaintiff's attack upon defendant's tax title. A reading of the decisions upon the proposition of when a court having custody of property through its receiver will or will not interfere with the process of the sale of such property to pay delinquent taxes discloses that the facts of the particular case have usually influenced the decisions. In the case at bar, assuming that the able and painstaking trial judge was called upon to consider the proposition here advanced by plaintiff, he was singularly well circumstanced to determine it. As chancellor in the suit to quiet title he was not unaware of the court's custody of the property. If the court in whose custody the property was saw no lawful objection to the recognition of the tax claim and saw no justification in ·the receiver's long and continued failure to pay the dues owing by him and necessary to carry on the government whose protection he enjoyed, we are not prepared to say that the court was not warranted in concluding that the fact that the property is in custodia legis is not of itself enough to warrant the court in withholding its sanction to the issuance of the tax deed. In other words, if the trial court under the circumstances construed plaintiff's answer as not containing sufficient allegations to withstand a demurrer, we are inclined to agree with him. The provisions of the tax statute are sufficiently broad to cover real property in the constructive custody of the court through its receiver. It is declared by section 37 of the act that if any county treasurer, by reason of incompetency, neglect, or dereliction of official duty shall fail to perform the duties required by this act, he shall be removed from office. As said in Metcalfe v. Commonwealth Land & Lumber Co.'s Receiver, supra, it was the treasurer's duty to sell the land and the person who bid has the right to buy. Section 141-415, N.M.S.A. 1929, provides that where taxes are delinquent on property in the hands of a receiver, the court having jurisdiction of the receiver shall immediately determine the amount of taxes so delinquent and order same to be paid within time to be fixed by the court. There is no allegation in plaintiff's answer to the cross-complaint that the receiver asked the aid of the court in the payment of the delinquent taxes. Section 141-413, N.M.S. A. 1929, is as follows: "No personal demand for the payment of taxes shall be necessary, it being the duty of *every person* subject to taxation or who owns or has any real estate, right, title or interest in any property ·subject to taxation, to pay the tax .

without demand, before the same becomes delinquent." (Emphasis ours.) This is sufficiently broad to cover receivers. The trial court may have considered the laches of the receiver urged by appellee in response to appellant's argument. The receiver brought no action to test the validity of the tax proceedings within two years from the date of sale. Section 25, chapter 27, L.1934, Sp. Sess. In any event, the court below did not think the allegations of plaintiff's answer to the cross-complaint were sufficient to show that the tax sale and subsequent conveyances by the treasurer were an improper interference with its custody of the property or the orderly administration of the receiver's business.

Finding no error, the judgment will be affirmed and the cause remanded for such further proceedings not inconsistent herewith as may be proper, and it is so ordered.

HUDSPETH, C. J., and SADLER, BRICE, and ZINN, JJ., concur.