91 P.2d 434

**SIMS v. VOSBURG et al.**
No. 4394.

Supreme Court of New Mexico.

May 25, 1939.

Tom W. Neal and Margaret Neal, both of Santa Fe, for appellant.

Hanna, Wilson & Brophy, of Albuquerque, Alfred H. McAdoo, of Phœnix, Ariz., and J. O. Seth, of Santa Fe, amici curiæ.

Hervey, Dow, Hill & Hinkle, and Atwood & Malone, all of Roswell, and Howard B. Rich, of Lovington, for appellees.

G. L. Reese, Jr., of Carlsbad, and John Ladner and Howell E. Hays, both of Tulsa, Okl., and A. Francis Porta, of El Reno, Okl., amici curiæ.

BRICE, Justice.

This action to quiet the title to 1060 acres of land was submitted to the district court on an agreed statement of facts, of which the following are material and sufficient to dispose of the case:

Of the 1060 acres of land in suit, the United States Government reserved the underlying minerals in all except 320 acres. Prior to the assessment of the lands for taxes for the year 1931, its owner conveyed by deeds the underlying minerals in the 320 acres to various persons, now appellees, or predecessors in interest of appellees, and such deeds were duly recorded in the deed records of Lea County before 1931. The owner of the surface interest listed the 1060 acres for taxation for the years 1931 and 1932, and for such purpose described it according to government surveys. The whole tract was assessed as "Class B" grazing land and valued at $1.75 per acre for 1931; and as "Class C" grazing land, valued at $1.50 per acre for 1932. The taxes for these years were not paid, though duly assessed and levied, and on Dec. 7, 1934, the land was purchased by the State of New Mexico at tax sale, and tax sale certificate duly issued and recorded. The mineral interests in the lands have never been separately rendered or assessed for taxes. On Feb. 20, 1936, the appellant paid the taxes, interest and penalties; and thereupon the tax sale certificate was assigned and a tax deed issued to him in due course.

The question is, whether the assigned tax sale certificate and deed conveyed to appellant the underlying minerals in the 320 acres of land.

The mineral deeds under which appellees claim conveyed to them all of "the oil, gas, and other minerals" underlying the 320 acres of land. The remaining interest therein, both surface and sub-surface, is owned by appellant, and his title thereto is not questioned.

All tangible property in New Mexico is subject to taxation in proportion to value, and should be taxed, unless specifically exempted by the constitution or by its authority. Secs. 1, 3, and 5 of Article VIII, N. M. Constitution; Albuquerque Alumnae Ass'n v. Tierney, 37 N.M. 156, 20 P.2d 267; State v. State Tax Commission, 40 N.M. 299, 58 P.2d 1204.

"All property, real and personal in the state shall be subject to taxation, except as in the constitution and existing laws otherwise provided." Sec. 141-101, N.M.Sts. Ann.1929.

"All property both real and personal shall be listed, assessed and taxed in the county where it is situated on the first day of January of each year and shall be included in assessment lists to be returned to the assessor on or before the first business day of February of each year. * * *" Sec. 141-201, N.M.Sts.Ann.1929.

A mineral deed conveys an interest in real estate; we have so held a number of times (Terry et al. v. Humphreys, 27 N.M. 564, 203 P. 539; Staplin v. Vesely, 41 N.M. 543, 72 P.2d 7. See Ann. in 29 A.L.R. at page 586, et seq.), and is subject to taxation. Sec. 141-101, N.M.Sts. Ann.1929; 2 Cooley on Taxation, 4th Ed.,

Sec. 566; Stephens County, et al. v. Mid-Kansas Oil & Gas Co., 113 Tex. 160, 254 S.W. 290, 29 A.L.R. 566; Downman v. State of Texas, 231 U.S. 353, 34 S.Ct. 62, 58 L.Ed. 264.

We do not think it is materially important that we have no statute specifically requiring the mineral rights to be separately assessed. Our statute (Sec. 141-203, N. M.Sts.Ann.1929) requires each person, firm, association or corporation to make a list of all his property subject to taxation and to file it with the assessor, whose duty it is to fix the value thereof. That this requires the separate taxation of severed mineral interests in lands to the owner is assumed by the legislature in enacting Sec. 18 of Chap. 171 of N.M.L.1933, which is as follows: "The sale of severed rights, whether of timber, mineral or other rights, made in the same manner as real estate, herein provided, shall vest the purchaser with whatever rights were possessed by the former owner of any such rights; and any and all such rights so sold for delinquent taxes hereunder, or other provisions of law, may be redeemed at any time within six months from and after date of sale thereof in the manner provided by law for the redemption of real estate, and not afterwards." By Sec. 33 of the same act it was provided: "The provisions of this Act shall be applicable to all property on which taxes are delinquent for the year 1931 or that may thereafter become delinquent and the proceedings prescribed herein shall be taken for collection of delinquent taxes for the year 1931 and fu-

ture years. All proceedings for the collection and issuing liens against property upon which taxes are delinquent for the year 1930 and prior years shall be and remain as by the Session Laws of 1929 and amendments thereof provided, unaffected by the provisions of this Act." These statutes were re-enacted in 1934 as Secs. 19 and 35 respectively, of Chap. 27 of the Acts of the Special Session of the N.M. Legislature of that year.

Each of these laws prescribes and limits the time within which severed rights can be redeemed from tax sales, and presupposes that there exists authority in the law under which *all severed rights*, "whether of timber, mineral *or other rights*", can be separately assessed and sold for taxes. A separate system of taxation has been provided for taxing mineral property classified as "productive properties" or "non-productive properties known to contain minerals in commercially workable quantities" (Sec. 141-505, N.M. Sts. Ann.1929), but as the land in suit was neither, these provisions for taxing mineral property do not apply thereto; hence we look to the general taxing statute for the applicable law.

It is conceded that the appellant's tax title is valid; but it is denied that the mineral interests of appellant were either assessed or sold for taxes. If such interests were assessed and sold for taxes, then appellant, who holds title to the real estate assessed and sold, has title to the minerals, unless such interest was redeemed from tax sale. The problem then

is reduced to the question of whether said mineral interests were assessed and sold for taxes for the years 1931 and 1932.

 Upon the enactment of Chap. 98, N.M.L.1919, for the leasing of state lands for oil and gas, large bodies were leased at nominal rentals, and this was followed by wholesale leasing of privately owned lands wherever leases could be secured, irrespective of real or prospective value. This brought about "wildcat" exploration for oil in New Mexico. Minerals were severed from thousands of acres of privately owned land by deeds and leases, without reference to whether there was in fact oil and gas underlying them. This was encouraged by the State, with a view to initiating "wildcat" exploration for oil and gas. Upon the faith of titles to these mineral rights vast sums of money have been spent, and thousands of acres, the value of which was nominal in 1921, or when they were purchased, are now worth millions of dollars. In the vast majority of cases, no real value ever existed, yet upon chance discovery of oil, the values might become great. Whether, therefore, speculative rights should be taxed at all depends upon whether there is any value to tax. Downman v. State of Texas, supra.

 The State of New Mexico and the United States have sold many thousands of acres of land in this state, reserving the mineral to the grantor. These lands are listed for taxes according to government survey, but no one would con-

tend that a sale thereof for taxes could convey the minerals to the purchaser at a tax sale. Of course the property of the state and of the United States is not subject to taxation and cannot be sold for taxes; but the public policy of the state, as shown by the statutes referred to and facts related, is to tax separately the severed mineral rights from the remainder of the fee when in different ownerships.

It is true that owners of property are required by statute to list it for taxation, and that a tax levied against land in the name of one not the owner, does not invalidate the tax. But unless it appears that the severed mineral interests in land evidenced by a duly recorded deed have actually been taxed in the name of the owner of the remainder of the estate as shown by the record, the taxes levied on land merely described by government surveys or metes and bounds, is not against the severed mineral rights.

It is evident from the facts in this case that the taxing authorities did not take into consideration the severed mineral interests in this property in valuing it for taxation. It was classed as grazing land and its value fixed at exactly the same value as that of other grazing land, from which the minerals have been severed. The severed mineral interests were neither assessed nor sold for taxes and the appellant obtained no title thereto by virtue of his certificates and tax deed.

This conclusion is supported by the case of Washburn v. Gregory Co., 125 Minn. 491, 147 N.W. 706, L.R.A.1916D, 304, which is a practically identical case; the only difference being that Minnesota has a statute that specifically provides that such mineral rights "may be assessed and taxed separately from the surface rights," etc. We quote liberally from this case because it is the only one cited or which we have found, in which the question here presented has been decided. The Minnesota court stated:

"The question involved is whether the tax proceedings, in which the land was described by its government description, without in terms including or excluding the mineral rights held by another than the owner of the surface, operated to assess and levy a tax upon such mineral rights and to convey such rights to the purchaser at the tax sale.

"If the tax was assessed and levied upon the entire land, including the mineral rights, and if the taxing officers might legally so assess and tax together the surface and mineral rights, the irregularity in not taxing separately the interests of the different owners did not affect the jurisdiction of the court in the tax proceedings. Under our statutes the true ownership of lands sought to be charged by tax proceedings is not material. * *

"If, however, the description of the property in the tax proceedings and certificate covered only the estate of the owner of the surface, and not that of the owner of the mineral rights, the taxes were not a lien upon the estate of the

latter, and the judgment did not attach to or the certificate convey such interest.

"It is well settled in this state, as elsewhere, that the owner of land may segregate the mineral estate from the rest of the land, and convey either interest without the other. * * *

"Before the statute [authorizing the separate taxing of mineral rights], it was not only proper to tax the mineral interest separately, but it was plainly an irregularity to assess to one owner as one property both the surface and the mineral rights, when they were owned separately. The Legislature must be credited with some object in passing the law. Whether this object was to make it obligatory to assess and tax mineral rights separately from the interest in the surface, or whether it was to declare and make clearer the already clear common law on the subject, may be open to doubt; but in either case there is a statutory direction to the taxing officers how to proceed when the interests are owned separately. * * * These considerations are helpful in reaching a decision whether the description of the property used in the tax proceedings includes the mineral rights. It contains no mention of any such right or interest. Manifestly it would have been easy to have described the property taxed as 'mineral rights,' as it would have been to describe it as 'surface rights.' The description used does neither, but is merely the government description. The interest of plaintiff in the minerals was plainly real estate and properly taxable separately.

The law directed the assessing officers to tax it separately. If the separate interest of the mineral owner is covered by this description, the result is that his property is taxed without notice to him, under the guise of taxing the property of another. The courts do not favor such a result. * * * The description in the case at bar when applied to the subject-matter, and viewed in the light of the facts and the law as they existed at the time the tax was levied, is fairly susceptible of the construction claimed for it by the plaintiff and adopted by the learned trial court. We therefore decide that the mineral or mineral rights of plaintiff were not covered by the description in the tax proceedings, and were not taxed in those proceedings.

"It does not seem important that the mineral estate may have escaped taxation. That the assessor omitted to assess this interest does not influence the decision in the present case. * * *"

It will be noted that the Minnesota Court indicated that their holding would have been the same in the absence of the statute, which they cited. The Supreme Court of Oklahoma came to a different conclusion in State v. Shamblin, Okl.Sup., 90 P.2d 1053, and State v. Kirchner, Okl.Sup., 90 P.2d 1055. But no provision is made by the laws of that state for the assessment of severed interests in real estate, and it is specifically provided by its statutes that "Real property for the purpose of taxation shall be construed to mean the land itself * * *

and all rights and privileges thereto belonging or in any wise appertaining, and all mines, minerals, quarries and trees on or under the same." 68 Okl.St.Ann. § 29. This statute is construed by the Oklahoma court to prohibit taxing severed interests separate from the land.

Nothing herein is inconsistent with our opinion in Alamogordo. Improvement Co. v. Hennessee, 40 N.M. 162, 56 P.2d 1127; Hood v. Bond, 42 N.M. 295, 77 P.2d 180; N. H. Ranch Co. v. Gann, 42 N.M. 530, 82 P.2d 632, or Alamogordo Improvement Co. v. Prendergast, 43 N.M. 245, 91 P.2d 428, this day decided.

The decree of the district court should be affirmed, and it is so ordered.

BICKLEY, C. J., ZINN and SADLER, JJ., and DAVID CHAVEZ, JR., District Judge, concur.