467 P.2d 19

**RIO COSTILLA COOPERATIVE LIVE-STOCK ASSOCIATION, an Association, Plaintiff-Appellant,**

v.

**W. S. RANCH COMPANY, a corporation, Defendant-Appellee.**

**No. 8888.**

Supreme Court of New Mexico.

Feb. 9, 1970.

Rehearing Denied April 8, 1970.

Dolan & Clear, Albuquerque, for plaintiff-appellant.

Montgomery, Federici, Andrews, Hannahs & Morris, Sumner G. Buell, Santa Fe, for defendant-appellee.

## OPINION

GEORGE L. REESE, Jr., District Judge.

Rio Costilla Cooperative Livestock Association sued W. S. Ranch Company in the District Court of Taos County, New Mexico, alleging that it was the owner in fee simple, by virtue of a tax deed, of a tract of land in Taos County, New Mexico, known as the Costilla Reservoir; that the property was completely surrounded by lands owned by the defendant, except for a public roadway traversing defendant's land to said reservoir and beyond; that the defendant had wrongfully attempted to prevent the free and uninhibited use of said roadway and that no other access existed to plaintiff's property. Plaintiff sought an injunction prohibiting the defendant from interfering with the use of the roadway by plaintiff, its agents and representatives.

In the second claim, plaintiff, on the same averment as to ownership, alleged that the defendant wrongfully attempted by force to limit plaintiff's right to the unrestricted use of its property, and sought an injunction against the defendant's attempted interference or trespassing. The plaintiff also sought damages for the alleged wrongful interference and attempts to deprive it of its property rights, and demanded a trial by jury.

The defendant denied the fee simple ownership of the plaintiff in the reservoir and alleged that the roadway was a private

roadway, but that it had permitted authorized personnel of the plaintiff to use the roadway for such travel as was necessary for the operation and maintenance of the dam and irrigation works and for releasing water at what is known as the Costilla Dam. For further defense to the first claim, the defendant alleged that the questions of law and fact raised in the complaint with regard to the roadway had been previously adjudicated in cause No. 5059 in the District Court of Taos County, wherein Rio Costilla Cooperative Livestock Association was plaintiff and Costilla Land Company, W. S. Ranch Company and the State of New Mexico were defendants. A further defense to the first claim was that the action to enjoin interference with an alleged public road was not brought by the real party in interest or, in the alternative, that the State of New Mexico or the County of Taos was an indispensable party. Lastly, defendant asserted that it and its predecessors had, for a period in excess of ten years, openly uninterruptedly, peaceably, notoriously and adversely to all persons, maintained the roadway for strictly private use.

As to the second claim, the defendant admitted that it claimed certain rights in the properties mentioned in the complaint and denied the remaining allegations.

During the progress of the case in the district court, the defendant secured a temporary restraining order, followed by a temporary injunction, enjoining the plaintiff, its agents, servants, officers, employees, and individual members, from going upon the lands of the defendant for any and all purposes other than inspecting, maintaining and operating the dam and irrigation works located at Costilla Reservoir, and providing further that only the officers or employees of the plaintiff, not exceeding seven who were designated by the president of the Association in writing, would be permitted to go over defendant's lands.

Motions for summary judgment were filed by both parties and extensive findings of fact and conclusions of law were requested by each party, after which the trial court filed its findings of fact and conclusions of law. Judgment, on the issues above stated, was entered for the defendant. The judgment made permanent the temporary injunction. The findings and conclusions made by the trial court will be disregarded, since they are not required and serve no useful function in a summary judgment proceeding. The parties will be referred to herein as they were in the district court.

From allegations in the application for the temporary restraining order above mentioned, and from depositions in the record, it appears that the real controversy between the parties involves an effort on the part of the plaintiff and its members to secure passage over the roadway to the reservoir, for the purpose of fishing and a reverse effort on the part of the defendant to prevent not only the plaintiff and its members, but the public generally, from poaching on what it considers its private fishing ground. It also appears that the plaintiff might have in mind the fencing of its reservoir site, and preventing the defendant and members of the public from reaching the reservoir waters without its permission.

The basic question presented on this appeal concerns the character of the estate in the dam, reservoir and roadway, which the plaintiff acquired by its deed from the State.

The tax deed from the State to the plaintiff was based upon a tax deed from the county treasurer of Taos County to the State of New Mexico, which in turn was based upon a certificate of sale for delinquent 1946 taxes. The tax deeds described the property as it was described in the 1946 tax assessment as follows:

"The Costilla Dam and Irrigation Works of the San Luis Power and Water Company, located in the Sangre de Cristo Grant * * * assessed to the San Luis Power & Water Company. * * *"

The same assessment, tax sale, and tax deeds, with which we are here concerned, were involved in the case of San Luis Power & Water Co. v. State, 57 N.M. 734, 263 P.2d 398 (1953). There, the validity of the tax deed and the 1946 assessment were challenged, but the deed was held to be valid. It was argued that the assessment covered only the dam and machinery, but the court held:

"* * * The term 'irrigation works' is comprehensive; it not only means the grounds and structures, but it includes the dam and machinery appurtenant thereto, dam site, reservoir and reservoir site as used by appellant in connection with irrigation. See State ex rel. State Tax Comm. v. San Luis Power & Water Co., 51 N.M. 294, 183 P.2d 605; Storrie Project Water Users Ass'n v. Gonzales, 53 N.M. 421, 209 P.2d 530; § 77–103, 1941 Comp."

The assessment in question, in the case last cited, was not by legal subdivision nor even as lands. It was "The Costilla Dam and Irrigation Works of the San Luis Power and Water Company," and was described on the tax roll as "improvements." It was argued that this rendered the assessment void, because improvements affixed to land under the law then in effect could not be assessed separately. We held that the dam and irrigation works are land for taxation purposes, but refused to void the assessment because of the erroneous classification as "improvements."

In this case, the action of the assessor in describing the property as "improvements" is significant in determining the character of the estate in the land which was actually covered by the assessment. We also think it is significant that the property was referred to as being that of the San Luis Power and Water Company, plaintiff's predecessor in interest. That company actually owned only rights of way and easements for the reservoir, distribution works, canals, etc. Its rights were obtained from Costilla Estates Development Company by deed dated April 15, 1909, duly recorded in Taos County, conveying water rights:

"Together with rights of way and easements for any and all reservoirs, ditches, canals, laterals and distribution works as now constructed or surveyed upon the ground, or which may hereafter be constructed or surveyed;"

and

"Together with rights of way for any and all pipe lines, power transmission lines, conduits, flumes, telephone and telegraph lines belonging to the party of the second part hereunder, or its assigns, and the right of ingress and egress to, over and across the lands of the party of the first part hereunder, for the purpose of surveying, locating, constructing, maintaining and repairing any and all reservoirs, ditches, canals, pipelines, flumes, power transmission lines, telephone and telegraph lines, belonging to the said party of the second part, or its assigns;"

The habendum clause in this deed provided:

"To have and to hold the said water system, waters and rights to the use of water above bargained and described, with the appurtenances, unto the said party of the second part, its successors and assigns forever, * * *"

In Sims v. Vosburg, 43 N.M. 255, 91 P.2d 434 (1939), we had occasion to consider questions similar to those involved in this case, with regard to the character of the property which was covered by an assessment of land by legal subdivisions. Prior to the assessment involved in that case, the minerals had been severed by recorded deeds, but had never been separately assessed. There was a sale of the land for delinquent taxes, and the owners of the minerals were made defendants in a suit to quiet title brought by the holder of the tax deed issued pursuant to the sale. After setting out and discussing the various statutes relating to the assessment of property, and announcing the public policy to tax separately the severed mineral rights from the remainder of the

fee when in different ownerships, we said:

"It is true that owners of property are required by statute to list it for taxation, and that a tax levied against land in the name of one not the owner, does not invalidate the tax. But unless it appears that the severed mineral interests in land evidenced by a duly recorded deed have actually been taxed in the name of the owner of the remainder of the estate as shown by the record, the taxes levied on land merely described by government surveys or metes and bounds, is not against the severed mineral rights."

We noted that the taxing authorities did not take into consideration the severed mineral interests in the property in valuing it for taxation and held that, since the severed mineral interests were evidenced by duly recorded deeds and were neither assessed nor sold for taxes, the tax deed conveyed no title to these interests. See also, Kaye v. Cooper Grocery Co., 63 N.M. 36, 312 P.2d 798 (1957).

■ We have already held in San Luis Power & Water Co. v. State, supra, that the assessment involved in this case is valid, although the description therein was "The Costilla Dam and Irrigation Works of the San Luis Power and Water Company." This description, together with the recorded deed, relates only to the severed easements held and owned by San Luis Power and Water Company.

This case is the reverse of the situation involved in Sims v. Vosburg, supra. Here we have a claim that the assessment of the severed interests covers the land upon which the dam is built and the land which lies underneath the high water mark of the reservoir.

While the exact question, as to whether easements for a dam and reservoir constitute "severed interests" for purposes of separate taxation, was not decided in Sims v. Vosburg, supra, we did notice § 18, Ch. 171, Laws 1933, re-enacted in Ch. 27, Laws 1934, and repealed by Laws 1953,

Ch. 160, which was in effect in 1946, and pointed out that that statute related to the redemption from tax sale of "severed rights whether of timber, mineral or other rights," and certainly the easements involved in this case come under the broad designation, "other severed rights."

■ We hold, under the principles announced in Sims v. Vosburg, supra, that the lands underlying the dam and reservoir, and which are burdened with easements for the maintenance and operation of the dam, were not covered by the 1946 assessment. The lands were not sold for delinquent taxes and the tax deed, upon which planitiff bases its title, does not cover them.

■ Our holding on this point does not, in any manner, conflict with cases holding that a tax sale and deed passes a new and paramount title to the property covered by the assessment and sale, such as Alamogordo Improvement Co. v. Hennessee, 40 N.M. 162, 56 P.2d 1127 (1936); Hood v. Bond, 42 N.M. 295, 77 P.2d 180 (1938); N. H. Ranch Co. v. Gann, 42 N.M. 530, 82 P.2d 632 (1938); and Alamogordo Improvement Co. v. Prendergast, 43 N.M. 245, 91 P.2d 428, 122 A.L.R. 1277 (1939).

■ The right of ingress and egress to the plaintiff's dam, reservoir and irrigation works, which was conveyed to San Luis Power and Water Company by the recorded deed hereinabove mentioned, was included in the assessment which resulted in the sale for delinquent taxes and was included in the tax deeds. Alamogordo Improvement Co. v. Prendergast, supra.

This right of the plaintiff to use the road across defendant's lands for ingress and egress to its irrigation works, dam and reservoir, for the purpose of maintaining and operating the dam, reservoir and irrigation works, has not been questioned by the defendant. The injunction contained in the judgment, limiting this right of ingress and egress to seven duly authorized representatives of the plaintiff, has not been questioned on this appeal,

except upon the ground that the roadway in question is a public roadway and that no limitation can, therefore, be lawfully made upon the right of the plaintiff and its members to use the roadway for travel to and from the reservoir, etc.

In this court the defendant, with regard to the road, has argued in support of the judgment the sole point that the roadway was adjudicated to be a non-public road in the case in Taos County District Court, already described in this opinion. We have examined the pleadings, findings and judgment in that case, and note that the State of New Mexico was dismissed as a party before there was any hearing on the merits. We also note that the claim of the plaintiff in that case was one of absolute ownership in fee to the roadway in question, and was based upon claimed instruments of conveyance. The judgment denying that claim is not res judicata of the claim made here, that the roadway is a public roadway.

However, plaintiff has suffered no special damage which authorizes it to litigate with the defendant the question as to whether the roadway is a public roadway. Neither the State of New Mexico nor the County of Taos is a party to this proceeding, and plaintiff's right of ingress and egress has been protected in the judgment.

The law, with respect to the right of an individual to sue for the abatement of highway obstructions is, in most respects, the same as is his right to sue for the abatement of other public nuisances and, in 39 Am.Jur.2d Highways, Streets and Bridges, § 311 at 693–694, this rule is stated as follows:

"* * *. As in other cases of public nuisances, a private individual has no right of action, either at law or in equity, because of the obstruction of a street or highway, unless he suffers some peculiar or special injury not common to the general public. The rule is sometimes based upon the theory that if an individual is interfered with in the use of the highway in the same manner as the other members of the community, his injury is merged in that of the public; otherwise, it is declared, suits would be multiplied intolerably. It has also been said that the rule springs from the principle that the law affords no private remedy for anything but a private wrong, that the damages resulting from a common or public nuisance, such as affects all of the public in the same way, though perhaps in different degrees, are of a nature to be impossible of apportionment among the injured public, and that therefore the only action maintainable is by the state."

We recognized this rule in Mandell v. Board of Commissioners of Bernalillo County, 44 N.M. 109, 99 P.2d 108 (1940), and in Hindi v. Smith, 73 N.M. 335, 388 P.2d 60 (1963).

Having disposed of the claim of ownership in fee simple against the plaintiff, and having held that the plaintiff may not, in this proceeding, raise the issue that the roadway in question is a public roadway, we might end this opinion, except for the issue as to whether the authorized representatives of the plaintiff were properly enjoined from fishing in the Costilla Reservoir after they have reached the dam for authorized purposes. This is the effect of the permanent injunction which enjoined them "from going upon the lands of the defendant W. S. Ranch Company to obtain access to the Costilla Reservoir and dam for any and all purposes other than inspecting, maintaining, repairing and operating the dam and irrigation works."

We will assume that the principles announced in State ex rel. State Game Commission v. Red River Valley Co., 51 N.M. 207, 182 P.2d 421 (1945), might require us to hold, under the facts of this case, that the waters in the Costilla Reservoir are public waters and that the public has a right to fish therein. However, we held in that case that the right of fishery did not entitle the public to trespass on the

lands of riparian owners in order to reach the water.

Here the facts show that the defendant now owns, and its predecessors in title did own, all the land surrounding and under the reservoir at the time of the deed to San Luis Power and Water Company by which the easements for the Costilla Dam, reservoir, and rights of ingress and egress thereto were conveyed. These easements were for the specific purpose of constructing, maintaining and operating the dam, reservoir and works, for irrigation purposes. The question posed for our decision is whether the easements in question would entitle the authorized representatives of the plaintiff to use the dam, as a means of entry on the reservoir water for the purpose of fishing therein. The defendant argues that the conveyance of a right to flood lands does not automatically carry with it the right to fish the flooded area, and that this right ordinarily remains with the grantor, citing Akron Canal & Hydraulic Co. v. Fontaine, 72 Ohio App. 93, 50 N.E.2d 897 (1943), and Annot. 49 A.L.R.2d 1395 (1956). We so hold, and also cite 2 Thompson on Real Property, § 425 (Repl. 1961).

Here it might be argued that the authorized representatives of the plaintiff, being on the dam for authorized purposes, can, for the purpose of fishing, enter on the reservoir water from the dam without trespassing on the underlying lands. The fallacy in this argument is that one who has an easement to enter on land for a particular purpose, and who employs his limited right of entry or occupancy for another purpose, becomes a trespasser while carrying out such other purpose. This rule is stated in 25 Am.Jur.2d, Easements § 72 at 478–479, as follows:

"* * * The owner of an easement is said to have all rights incident or necessary to its proper enjoyment, but nothing more. And, if he exceeds his rights either in the manner or in the

extent of its use, he becomes a trespasser to the extent of the unauthorized use."

Finding no error in the judgment, it is affirmed.

It is so ordered.

MOISE, C. J., and TACKETT, J., concur.