82 P.2d 632

### N. H. RANCH CO. v. GANN.

No. 4349.

Supreme Court of New Mexico.

July 15, 1938.

On Rehearing Sept. 1, 1938.

Alvan N. White and Clyde T. Bennett, both of Silver City, for appellant.

Hanna, Wilson & Brophy and James F. Warden, all of Albuquerque, for appellee.

BICKLEY, Justice.

Plaintiff sued to quiet title to lands alleged to be owned by it in Catron County. The complaint sets forth that defendant claimed title to the land by virtue of a pretended tax deed, and set forth in detail the omissions of the taxing authorities, and alleged that the said tax deed was a spurious instrument, the recording of which created a cloud upon the plaintiff's title. Some of such omissions are that the county treasurer did not publish the required notice of tax sale in a newspaper of general circulation published in Catron County or an adjoining county; did not give any notice to the then record owner of the property, T. C. Hilliard, by register-

ed mail; did not appear in person or by deputy at the front door of the court house, or at the building where the district court is regularly held, on the 12th day of June, 1933, and offer for sale at public vendue the property described in the complaint; that he failed to sell the property and each item or parcel thereof to the highest bidder for cash and failed to continue the same from day to day for a period of five days; that he did not carry over the said property which was unsold at the close of each day and again offer the same for sale on the succeeding day; that he did not strike off and sell to the State of New Mexico on the 5th day of the claimed sale for the amount of taxes, interest, penalties and costs the property described in the complaint; that he did not himself or by deputy note the words "sold to the state" with the date sold, opposite the description of the property of plaintiff on the tax roll as required by law; that he did not endorse on the tax rolls opposite the entries of the property the fact of assignment, the date thereof, or the name of the assignee, as required by law; that he did not between sixty and ninety days after the purported sale give notice to T. C. Hilliard or anyone else by registered mail that said property had been sold for delinquent taxes; that he did not give notice to Hilliard between sixty and ninety days after the purported sale of any of the matters and things required by Sec. 15, Ch. 171, L.1933; that he failed to secure the recording of the certificate of sale; that he did not send the triplicate copy of the purported tax sale certificate to the State Tax Commission for its records.

Defendant challenged the sufficiency of the attack made in the complaint upon the tax proceedings eventuating in a tax deed by motion to strike and demurrer to the complaint, which were overruled. Defendant answered, again challenging the sufficiency of such attack. At the trial five witnesses, all being officers or former officers of Catron County were called on behalf of the plaintiff and testified in its behalf. At the close of plaintiff's case defendant moved for judgment, which motion was by the court overruled. The court made all the findings of fact requested by plaintiff and refused most of the findings requested by defendant. Judgment was entered cancelling the tax deed, adjudicating that defendant had no interest in the lands in question and that plaintiff's title to the lands be quieted.

Defendant assigns twenty-four errors, which he presents under eight points for reversal. Appellee thinks they may be argued under three points. As some of the plaintiff's contentions made in the trial court have been abandoned either there or here, we find it convenient to consider the contentions of plaintiff as they are here presented, upon which it must rely to support the judgment in its favor. They are: First, that there was an entire omission of the taxing authorities to give notice of the sale of the property; second, that there was an entire omission of the taxing authorities to sell the property; third, that the

taxing authorities have no power or authority under the facts in this case to sell the property because of the provisions of Ch. 133, L.1935, known as the Moratorium Act; fourth, that defendant took no exceptions to findings of fact by the court of an entire omission on the part of the taxing authorities to give notice of the sale and to sell the property, and therefore such findings cannot be reviewed in order to determine whether they are supported by substantial evidence.

■ As to appellee's third point of attack involving the Moratorium statute, it is sufficient to say that no such question was presented in the pleadings or on the trial. No findings of fact or conclusions of law were made or requested which would support plaintiff's contention now said to be made for the first time that at the date of the assignment of the tax sale certificate to defendant the county treasurer had no right to make such an assignment because of the moratorium provisions of Ch. 133, L.1935, and the facts. The plaintiff is not in a position to here bring forth grounds to support the judgment which were not urged in the trial court and which defendant had no opportunity to resist.

■ Ch. 171, L.1933, was in force at the time of the tax sale involved herein and governing the validity of the sale.

The plaintiff is therefore confronted with the provisions of Sec. 23 of that Act, which contains what are generally described as "curative provisions." A portion of that section is as follows: "In all controversies and suits involving title to real property, claimed and held under and by virtue of a tax deed executed substantially as aforesaid by the Treasurer, the party claiming adverse title to that conveyed by such deed shall be required to prove, in order to defeat the said title, either that the said real property was not subject to taxation for the year or years named in the deed, or that the taxes had been paid before sale, or that the property had been redeemed from the sale according to the provisions of this Act, and that such redemption was made or had for the use and benefit of the persons having the right of redemption, under the laws of this State; or that there had been an entire omission to list or assess the property, or to levy taxes, or give notice of sale, or sell the property. * * *"

Similar provisions have been in our statutes governing tax proceedings for many years; notably Sec. 25, Ch. 22, L. 1899, providing that no sale or tax title had in accordance with the Act should be invalidated except upon the ground that the taxes were paid before sale or that the property was not subject to taxation. In Maxwell v. Page, 23 N.M. 356, 168 P. 492, 5 A.L.R. 155, it was said that these provisions "are to be given effect according to their terms, and are held to control other provisions of the act which are merely directory."

This doctrine has not been impaired by later decisions. Similar provisions were

enacted into Sec. 435, Ch. 133, L.1921. In Witt v. Evans, 36 N.M. 365, 16 P.2d 60, we said (page 61) that the provision of that section "renders tax sales and tax titles impervious to attack, except upon the grounds that the land was not subject to taxation, or that the taxes had been paid," and rephrased the language of the holding in Maxwell v. Page, supra, heretofore quoted, into a plain and forceful statement now frequently employed that this provision "means just what it says." Those who desire to pursue the subject of the meaning of these curative provisions will find discussions in Cavender v. Phillips, 41 N.M. 235, 67 P.2d 250; Knollenberg v. State Bank, 40 N.M. 284, 58 P.2d 1195; Alamogordo Imp. Co. v. Hennessee, 40 N. M. 162, 56 P.2d 1127; Lawson v. Hedges, 37 N.M. 499, 24 P.2d 742; Witt v. Evans, 36 N.M. 365, 16 P.2d 60; Eaves v. Lowe, 35 N.M. 610, 5 P.2d 525; Knollenberg v. State Bank, 35 N.M. 427, 299 P. 1077; Moore v. National Bank of N. M., 35 N.M. 300, 295 P. 424; Baker v. Johnson, 35 N.M. 293, 295 P. 421; Williams v. Van Pelt, 35 N.M. 286, 295 P. 418.

The legislature by Sec. 23, Ch. 171, L. 1933, added to the grounds of attack previously existing the following which are pertinent to our consideration here: "That there had been an entire omission to * * give notice of sale, or sell the property."

 We must give effect to each word of the statute. When the legislature of 1933 added these grounds of attack upon tax proceedings to those enumerated in previous statutes they were familiar with the holdings of this court that "defects or irregularities in the notice of sale were not jurisdictional, and that the restriction of defenses to tax sales to the fact that the taxes had been paid, or the property was not subject to taxation, was a valid exercise of legislative power"; and that "a premature sale was an irregularity which was not available to the owner in view of the restricted defenses reserved in the statute." See Manby v. Voorhees, 27 N.M. 511, 203 P. 543, 548. It may be assumed also, though we express no opinion, that a total failure to give notice of sale, and a total failure to sell were theretofore considered as jurisdictional. There had been obiter expressions to that effect. When Sec. 23 of Ch. 171, L.1933 was drafted, the language selected embodied these views. Defects or irregularities in the notice of sale or sale were not to afford grounds of attack in the absence of fraud. It is "the *entire* omission to * * give notice of sale" or "*entire* omission to * * sell the property" that affords the grounds of attack. It seems unnecessary to define "entire." It is readily understood. Entire omission to perform a required act carries the idea of wholly, completely, fully refraining from the action required. We do not see how an act of giving notice of sale in turn made up of several different requirements, some of which are perfectly performed and others imperfectly carried out can be said to be entirely omitted. That which is substantially done as directed cannot be said to be

not done at all because all directions are not perfectly complied with.

The New Jersey Supreme Court in State, Tindall, Prosecutor, et al. v. Vanderbilt, Collector, 33 N.J.L. 38, said that real estate must be assessed in the name of some person as owner thereof, and considering a statute which provided that notwithstanding any mistake in the names, or omission to name the real owner, the assessment shall be valid, expressed the opinion that such statute did not go to the length of declaring that an *entire omission* of any owner's name, would not invalidate the proceedings, but drew a distinction between entire omission and a case where the name of the owner is mistaken, or a wrong owner is substituted for the real owner, in good faith.

We turn now to the court's conclusions of law. As hereafter more particularly referred to, there is no evidence that the conclusions of law requested by plaintiff were adopted, but since the judgment contains a recital that the court "finds the issues in favor of the plaintiff and against the defendant," we assume that the court adopted the view of plaintiff expressed in the following two requested conclusions of law:

"That the County Treasurer of Catron County, State of New Mexico wholly failed to give notice of the purported sale of real property in Catron County, State of New Mexico, for taxes delinquent for the year 1932 and prior years as required by the provisions of Chapter 171 of the Laws of 1933.

"That the County Treasurer of Catron County, State of New Mexico, wholly failed to sell the land described in Plaintiff's Requested Finding of Fact No. 2, for taxes due on said property for 1932 and prior years as required by provisions of Chapter 171, Laws of 1933."

Sec. 3 of the Act requires the Treasurer to post notice of the sale and that he shall publish said notice in a newspaper of general circulation and regularly published in the county where the land is situated and if there be no such newspaper published in the county the publication shall be in a newspaper of general circulation and published in an adjoining county.

Perhaps it will be just as well to take up now the findings of fact requested by plaintiff and relied on to sustain the foregoing conclusions. Finding No. 8 is perhaps a mixed finding of fact and conclusion of law, and is as follows: "That during the year 1933 there was a newspaper of general circulation and regularly published in Catron County, New Mexico, and there were newspapers of general circulation in said county published in adjoining counties of Grant and Socorro, and said Roy M. Snyder did not himself, or by his deputy, publish or cause to be published, the notice required, by Section 2, Chapter 171, Laws of 1933, in a newspaper, as required by Section 3, Chapter 171, of the Laws of New Mexico, 1933." The first clause of said finding is directly contrary

to a stipulation in the record that there was *not* a newspaper of general circulation published in Catron County, and was apparently adopted through inattention and inadvertence. The second clause that "there were newspapers of general circulation in said county (Catron) published in the adjoining counties of Grant and Socorro" is not sustained by substantial evidence. The only evidence we find on the subject is that of Roy Snyder who was the Treasurer of Catron County at the time of the sale and during the time required for giving notice thereof. He was a witness called for plaintiff and thus vouched for by it. He testified that he published a notice in Spanish in El Defensor del Pueblo, a newspaper in the main conducted in the Spanish language in Socorro County. He did not know what newspapers were published in adjoining counties having a general circulation in Catron County. This suggests the non-existence of such newspapers. He thought the Silver City Independent published in an adjoining county had a general circulation in the "southern part" of Catron County. He testified that the notice was published in the Albuquerque Journal because it had a general circulation in Catron County. He selected the Journal on account of its general circulation in said county. The Albuquerque Journal is not published in a county adjoining Catron County.

It is suggested in Maxwell v. Page, supra, that notice of sale is in the interest of the state for the purpose of apprising prospective purchasers of the property for sale to the end that the state revenues may be collected. Even if it be considered that notice was also designed to warn the owner, this feature is minimized in view of the fact that the delinquent is bound to know that the taxes on his land have not been paid, and it ought to occur to him that failure of taxing officials to strictly comply with the requirement was a mere mistake and he should have governed his action in accordance with the suggestion. See Shawler v. Johnson, 52 Iowa 473, 3 N.W. 604.

As to what is a "newspaper of general circulation in the county" may depend upon a number of considerations. In 46 C.J., Newspapers, § 9, it is said: "The question as to whether or not a newspaper is one of general circulation involves other elements besides the number of its subscribers. That a newspaper is of general circulation must depend largely upon the diversity of its subscribers rather than upon mere numbers." Extent of circulation is also involved. See note 94(a), 4 C.J. p. 22. In § 11 it is said: "A statutory proceeding, before a designated tribunal to have a newspaper declared a newspaper of general circulation is considered a special proceeding. * * *"

This suggests that the county treasurer acts in a quasi-judicial capacity in determining whether there is a newspaper "of general circulation in the County and published in an adjoining County." Laws 1933, c. 171, § 3. If he decided, as

he apparently did, that there was no newspaper published in the English language in an adjoining county having a general circulation in Catron County, he cannot be said even to have abused his discretion under the evidence here presented.

We apprehend that the legislature was more intent upon the fact of "general circulation in the county" than the place of publication. Perhaps publication in an adjoining county was mentioned on the assumption that it would be more likely that a newspaper so published would have a general circulation in nearby counties.

If the treasurer properly did not think there was a paper conducted in English of general circulation in Catron County published in Grant or Socorro or Valencia counties, that was the end of the matter. Publication in still another newspaper, though of general circulation in Catron County but published in a county not adjoining thereto, such as the Albuquerque Journal, was not required by the statute and was supererogatory, but still it indicates a purpose and a desire on the part of the Treasurer to accomplish the object of the statute.

The evidence shows that the notice of sale was posted in substantial compliance with the law and would support a finding that notice thereof was sent by registered mail to the record owner as required by law.

Plaintiff did not commence a suit within two years from the date of the sale seeking to show any irregularities of any officer or neglect or failure of any officer to perform his duty as authorized by Sec. 25 of the Act.

We do not hesitate to say that the trial court was in error in concluding that there was an "entire omission" to give notice of the sale.

We reach a like result as to the court's conclusion that there was an "entire omission" to sell the property. The county treasurer whose duty it was to conduct the sale testified that he sold it, and consideration of his testimony shows an effort to sell it as required by law. The principle complaint is that it was not reoffered each day of the sale; the delinquent list being a long one, it appears likely that the whole list of descriptions was not read each day of the period of the sale before striking off to the county. We have carefully considered the evidence and do not find it sufficient to support the findings of fact relied upon to authorize the court's conclusion. Without going into further detail as to the evidence, we hold that the plaintiff failed to discharge the burden resting upon it of showing "entire omission" to sell. The most that it can fairly claim is that there were some irregularities about it. Such irregularities, if any, are not available to plaintiff, first, because of the curative provisions contained in the statute (Sec. 23), and because barred by the statute of limitations (Sec. 25).

Plaintiff makes reference in its brief to a discrepancy between the description of

the land it claims to own and the description of the land in the tax sale certificate and tax deed, but plaintiff brought suit against defendant to cancel the tax deed. The plaintiff said it was the owner of the land and that defendant claimed title by virtue of the tax deed, but had no title thereto. After doing this we do not think it is in a position to challenge the sufficiency of the description. See Barker v. Mecartney, 10 Kan.App. 130, 62 P. 439.

Appellee asserts that no specific exception or objection is made to the findings of fact given by the court and that they are, therefore, to be accepted as the facts in the case. The record has caused us some inconvenience in the review. The court took the case under advisement and made certain findings over a month thereafter without giving notice to counsel for defendant. A paper designated "Plaintiff's Proposed Findings of Fact" and a paper designated "Defendant's Requested Findings of Fact and Conclusions of Law" were filed in the cause, each on the same day that the paper entitled "Final Decree" was filed. No formal order of the court was made upon the findings and conclusions requested by the parties. As to defendant's requested findings, they were endorsed "refused" or "admitted". In one instance a long finding of fact requested by defendant was interspersed with the words in parenthesis "admitted", "refused", "admitted," breaking into the continuity of sentences. All of the plaintiff's requested findings of fact were endorsed thereon "admitted." There were not any endorsements on the conclusions of law requested by plaintiff. No conclusions of law separate from the findings of fact and judgment appear in the record. The words "refused" or "admitted" written on the findings as aforesaid are not signed by the judge. They are not dated. If an issue arose as to whether the words endorsed thereon were so endorsed by the judge, there would be no way to establish the fact except by parol testimony. The procedure followed was not a novel one, but fraught with great inconvenience to counsel and the reviewing court.

There was no proof as to service of notice that the court would make findings of fact and render its decision. Counsel for appellant asserts in his brief as an excuse for not taking specific exceptions to the so-called findings of fact that: "We were not advised of the date or place the trial court would pass upon this case, and, therefore, were not present when the case was passed on and the judgment signed; the judgment, the findings of fact and conclusions of law had all been signed and filed in the office of the Clerk at Socorro before Appellant, or his attorneys, had any knowledge that judgment had been entered. Therefore, the appellant was never given an opportunity to save his exceptions to the rulings of the court and it was evidently through the generosity of Appellee's attorneys that the Appellant was allowed an exception to the

judgment." The correctness of this statement is not challenged. It is true the judgment recites the presence of counsel for the parties, but we apprehend it was prepared in that form and through inadvertence was not corrected when signed. The manner of attempting to make findings of fact pursued in this case tends to inadvertence. Such inadvertence accounts for a number of inconsistencies appearing between findings requested by the opposing parties and apparently adopted by the court. Sec. 105-813, N.M.S.A.1929, provides that " * * * Upon the trial of any question of fact by the court, its decision must be given in writing and filed with the clerk in the cause, and in such decision the court shall find the facts and give its conclusions of law pertinent to the case, which must be stated separately, but the finding of fact and the giving of conclusions of law may be waived by the several parties to the issue, by suffering default or by failing to appear at the trial, or by consent in writing, or by oral consent in open court, entered in the record." The statute was not complied with by the trial court. It has been held that the rule that the lower court's findings will not be reviewed in the absence of exceptions thereto does not apply when there was no opportunity to attack such findings in the lower court. 4 C.J.S., Appeal and Error, § 336, p. 729, citing Kennedy v. Derrickson, 31 P. 766, 5 Wash. 289; see also Donohue v. Merriam, 238 Mich. 253, 213 N.W. 150. Perhaps we have taken a different view in Moore v. Brannin, 33 N.M. 624, 274 P. 50, which indicated that the proper procedure would be for the party complaining of absence of notice of the court's action in cases taken under advisement would be to move to set aside the judgment for irregularity and thereupon make exceptions. This would seem rather idle if the only kind of exceptions sought to be taken were formal ones merely because Sec. 105-830, N.M.S.A.1929, dispenses with the necessity of making formal exceptions. The main function of an exception is to call the attention of the court to the error which it is thought has been committed in order that he may have an opportunity to reconsider it and correct it and avoid miscarriage of justice or a new trial. It would seem then that justice has been done if the party complaining has in some manner called the attention of the trial court to the claimed error. See Osborne v. Osborne, 24 N.M. 96, 172 P. 1027; Garcia v. Silva, 26 N.M. 421, 193 P. 498.

█ Furthermore, it is observed that the general rule that findings of fact are conclusive in the absence of specific exceptions is relaxed where the adverse party has requested contrary findings and secured a ruling thereon. Williams v. Sinclair Refining Co., 39 N.M. 388, 47 P.2d 910. See, also, 4 C.J.S., Appeal & Error, § 336, Note 8. An examination of the record shows that in each instance of findings of fact upon which appellee must

rely to sustain the legal conclusions that there was an entire omission to give notice of the sale and an entire omission of the treasurer to sell the property involved, appellant, defendant below, requested a contrary finding. The court found at the instance of counsel for plaintiffs: "That during the year 1933 there was a newspaper of general circulation and regularly published in Catron County * * *" Whereas it was stipulated by the parties that there was not during the year 1933 a newspaper of general circulation published in Catron County. The court endorsed "admitted" on one of plaintiff's requested findings which was as follows: "That the said property was not listed, assessed or taxed by Catron County, or included in the assessment lists of said county for the year 1932." And on behalf of defendant endorsed "admitted" the following, which is a portion of one of defendant's requested findings: "That said real estate and premises were lawfully assessed for taxes for the fiscal years 1931–1932, and the taxes were not paid but became delinquent, and said taxes being unpaid and delinquent the County Treasurer of Catron County, State of New Mexico * * * and there being no other bidders, said property was duly sold to the State of New Mexico for the delinquent taxes, interest, penalties and costs, and the County Treasurer of Catron County, State of New Mexico, issued his Tax Sale Certificate No. 139 certifying that said property was sold to the State of New Mexico for taxes, and thereafter did, on the 5th day of June, 1935, assigned said Tax Sale Certificate No. 139 to W. O. Gann, the defendant herein."

Furthermore, as we have seen, defendant challenged the sufficiency of the evidence to afford the relief prayed for by plaintiff. In view of all these circumstances, we conclude that the trial court was fully advised as to the contentions of the defendant, both as to the law and that the evidence did not warrant the material findings given by the court and heretofore described.

The judgment will be reversed and the cause remanded, with directions to proceed further in a manner not inconsistent with the views herein expressed, and it is so ordered.

HUDSPETH, C. J., and SADLER, BRICE, and ZINN, JJ., concur.

### On Rehearing.

BICKLEY, Justice.

In our original opinion we said that plaintiff made reference to a discrepancy between the description of a part of the land it claimed to own and the description of the land in the tax sale certificate and the tax deed. Plaintiff's exposition of the significance of this circumstance was quite limited.

The plaintiff must recover on the strength of its own title and not on the

weakness of the title of its adversary. The view of the writer of the opinion, not shared by all, was that since the findings of the court not objected to by plaintiff showed that the land described in plaintiff's complaint had been assessed and sold for taxes and not redeemed, the plaintiff had been divested of its title and that under the principles announced in Duran v. Springer, 37 N.M. 357, 23 P.2d 1083, the tax sale certificate and tax deed, even if insufficient to sustain a claim of title in defendant, were sufficient shield to resist a decree in plaintiff's favor and that possibly defendant could avail himself of a remedy similar in character to that suggested by Sec. 26, Ch. 171, L.1933.

■ Plaintiff now brings forward the fact that the vice of misdescription appearing in the tax sale certificate and tax deed inheres in the tax roll for the years 1931 and 1932 also, these being the years for which the taxes were delinquent. We have re-examined the record and find that the tax rolls for said years show the following land assessed in the name of T. C. Hilliard, who was then the record owner of the lands described in plaintiff's complaint: "Northeast Quarter of the Southeast Quarter, Sec. 18, Township 4 South, Range 17 West; the East half of the Northwest Quarter, Section 14, Township 4 South, Range 18 West; The East Half of the Southwest Quarter; the Northwest Quarter of the Southwest Quarter; the Southwest Quarter of the Northwest Quarter, Section 11, Township 4 South, Range 18 West; the East half of the Northwest Quarter Section 30, Township 4 South, Range 18 West; the Northwest Quarter of the Northwest Quarter, Section 29, Township 4 South, Range 18 West."

The error appears in the use of the range number "18 West" as to lands in Sections 29 and 30, Township 4 South, instead of Range 17 West, wherein was situated plaintiff's land as described in its complaint. It is proper to say that the record indicates that the error originated with the land owner and taxpayer when he filed his list or return of his property. We doubt that the circumstance of the taxpayer being responsible for the error would affect the situation with respect to divestiture of plaintiff's title by the subsequent tax proceedings and sale. The punishment of losing its land for failure to make an accurate description would seem to be disproportionate to the offense.

It thus appears that 120 acres of the 400-acre tract of land of which plaintiff was the record owner as asserted in his complaint to quiet title was not assessed and sold for the years 1931 and 1932, notwithstanding the findings of the court heretofore adverted to. This defect seems beyond cure so far as the sale for taxes involved in the present case is concerned. We suggested in the original opinion that the method of making findings of fact employed by the court, though not a novel one, was "fraught with great inconvenience to counsel and the reviewing court." The confusion which has resulted in the case

at bar is a patent example of such inapt method of making findings.

The matter does not require more extended discussion. It being our duty to render such decision as is conformable to justice, our former opinion and judgment will be modified to conform to what we have now said. The judgment will be reversed as to the Northeast Quarter of the Southeast Quarter, Section 18, Township 4 South, Range 17 West; the East Half of the Southwest Quarter, the Northwest Quarter of the Southwest Quarter, the Southwest Quarter of the Northwest Quarter, Section 11; the East Half of the Northwest Quarter, Section 14, Township 4 South, Range 18 West; and affirmed as to the Northwest Quarter of the Northwest Quarter, Section 29, and the East Half of the Northeast Quarter, Section 30, Township 4 South, Range 17 West, and the cause is remanded with directions to make appropriate orders and judgments to place defendant in possession of the Northeast Quarter of the Southeast Quarter, Section 18, Township 4 South, Range 17 West; the East Half of the Southwest Quarter, the Northwest Quarter of the Southwest Quarter, the Southwest Quarter of the Northwest Quarter, Section 11; the East Half of the Northwest Quarter, Section 14, Township 4 South, Range 18 West, and to otherwise proceed in a manner not inconsistent with the views herein expressed. It is so ordered.

HUDSPETH, C. J., and SADLER, BRICE, and ZINN, JJ., concur.