389 P.2d 702

Francis Louis STURM and Christine Antonia
Augustine Sturm, his wife, Appellants,

v.

Gustav F. HEIM and Florence E. Heim,
his wife, Appellees.

No. 7428.

Supreme Court of Arizona.

In Division.

Feb. 27, 1964.

Herbert B. Finn, Phoenix, for appellants.

Cordova, Goss & Mariscal, Phoenix, for appellees.

JENNINGS, Justice.

On September 23, 1958, plaintiffs-appellants filed their complaint praying for specific performance of an agreement for the sale of real estate between appellants and defendants-appellees. Certain other relief was requested by appellants, but these prayers are not now at issue.

Appellees answered to the effect that appellants had forfeited all of their rights under the agreement and were barred by the statute of limitations. Appellees also filed a counterclaim to quiet title. Appellants filed a reply in the form of a general denial.

The case was tried to a jury, but the jury was dismissed, being unable to arrive at a verdict. Both parties filed a motion for a directed verdict. The court granted appellees' motion. Judgment was entered on the counterclaim and on the order granting appellees' motion. Appellants' motion for a new trial was denied.

From the order granting appellees' motion and the judgment entered thereon, from the judgment on the counterclaim, and from the orders denying their motions for a directed verdict and a new trial, appellants bring this appeal.

Hereinafter appellants and appellees will be designated "buyers" and "sellers" respectively.

The evidence shows that on December 10, 1947, buyers and sellers entered into an agreement for the purchase of eighty acres of real property described as follows:

"The North one-half of the Southwest one-quarter of Section 11, Township 4 North, Range 2 West of the Gila and Salt River Base and Meridian."

The purchase price was $2,500, $300 of which was to be paid upon the execution of the agreement with the balance payable in installments of $40 per month with interest on the unpaid balance at the rate of

four per cent per annum. The monthly payments were to commence upon the 3rd day of January, 1948, and to continue upon the 3rd day of each and every month thereafter until the entire sum was paid.

The buyers agreed to pay all taxes and assessments levied upon the said premises for the year 1948 and subsequent thereto. The sellers covenanted to deliver possession upon the execution of the agreement, and to deliver a warranty deed upon the payment in full of the purchase price.

The agreement contained the following default clause:

"In case the second parties shall fail to make the payments aforesaid, or any of them, *punctually* and upon the strict terms and at the times and in the manner provided for, and otherwise to conform and to complete all and each of the agreements and stipulations aforesaid stricly and literally, without *any failure or default, time being of the essence of this contract, then this contract shall, from the date of such failure, be null and void, and all right and interest hereby created or existing in favor of the second parties, and their heirs or assigns, or derived under this contract, shall utterly cease and determine,* and the premises hereby contracted for shall revert to and revest in the first parties, their heirs or assigns, *without any declaration of forfeiture or re-entry, or without any*

*other act by first parties to be performed,* and without any right of second parties of reclamation of compensation for moneys paid or improvements made, as absolutely, fully and perfectly as if this contract had never been made. And it is hereby further covenanted and agreed by and between the parties hereto that, immediately upon the failure of the second parties to make any of the payments as above provided, all previous payments shall be forfeited to the first parties and shall be retained by said first parties in full liquidation of all damages by them sustained." (Emphasis ours.)

Shortly after the purchase, the buyers proceeded to build a home upon what they thought was the eighty-acre plot. In choosing a site for the location thereof, they were guided by the advice of Mr. Heim, one of the sellers. The land in question had not been surveyed at the time of the agreement, but a subsequent survey showed that the home had been built on property owned by one Costello. The sellers, in order that the buyers would not lose their home, (the buyers had moved to California during the latter part of 1949) purchased approximately three acres from Costello and had the deed made out to the buyers as a gift. The deed was dated June 30, 1951.

On August 6th, 1951, the sellers sent the buyers a letter enclosing therein the deed

to the three acres and explaining that the acreage adjoined the eighty acres which they were purchasing and that they would not lose their home. They also stated that they did not know whether the buyers had paid the taxes on the eighty acres, but that after October 1st, the property would be sold for taxes, if delinquent.

After receiving the letter of August 6th, the buyers hired an attorney, Mr. Sylvan Allen, of Los Angeles, California. The buyers were concerned about whether the three acres were contiguous with the land they were purchasing. Allen wrote to the sellers in September and enclosed therein the monthly payment. He stated that the payment was being made under protest, and was merely to keep the purchase contract in good standing. Up through August, all of the payments had been made on time, but this one was received late on September 24, 1951. This brought the total sum paid up to $2100, 84% of the purchase price. No further payment or tender to pay in accordance with the terms of the contract was made until the filing of the lawsuit seven years later.

This is an executory contract for the sale of real property in which the sellers agreed to deliver possession immediately and a warranty deed to the property "upon the payment in full of the purchase price." The buyers failed to make the payments and the sellers treated the contract as being terminated in accordance with its provisions. The sellers even redeemed the property when the buyers failed to pay the taxes thereon. Seven years after the default in payment, the buyers brought this action for specific performance of the contract.

■ By clause 4 of the agreement, the contract terminated automatically upon the buyers' failure to perform punctually, and this without any declaration of forfeiture being required on the part of the sellers. By the same clause, time was made of the essence of the contract. Where time is of the essence of the contract, a default in payments entitles the sellers to treat the contract as at an end. Major-Blakeney Corp. v. Jenkins, 121 Cal.App.2d 325, 263 P.2d 655; Kelso v. Ulrich, 67 Cal.App.2d 698, 155 P.2d 407.

■ The nonpayment alone created the forfeiture. No declaration of forfeiture or notice of intention to declare a forfeiture was necessary because the contract so provided. Gilbert v. Union Pac. R. Co., 79 Neb. 160, 112 N.W. 359, Fratt v. Daniels-Jones Co., 47 Mont. 487, 133 P. 700. See also Bailey v. Burkitt, 201 S.W. 725 (Ct. Civ.App.Tex.) and Sunset Oil Co. v. Marshall Oil Co., 47 Cal.App.2d 716, 118 P.2d 842.

■ The buyers, having paid in excess of 50% of the purchase price, had nine months in which to redeem the property, not seven years. A.R.S. § 33-741. The

statutory grace period, during which the forfeiture of rights may not be enforced, runs from the date of default, and not from the date of termination of the contract, Alger v. Brighter Days Min. Corp., 63 Ariz. 135, 160 P.2d 346, although the two dates, by reason of the contract, are the same in the instant case.

■ The granting of relief against forfeiture is generally considered discretionary and such relief will be granted only where it is equitable under the circumstances. Hassenpflug v. Hart, 89 Ariz. 235, 360 P.2d 481. The statutory redemption period having elapsed, we must examine the record to determine if there is any evidence to explain or excuse the long period of default, so that equity can invoke its jurisdiction to grant relief.

■ In passing upon the question whether the lower court should have directed a verdict for appellees, we will view the evidence most strongly against appellees and in the light most favorable to appellants. Also, in such case, whatever competent evidence appellants have introduced, including all inferences that can reasonably be drawn therefrom, is assumed to be true, and, if the evidence is of such character that reasonable minds may differ on the inferences to be drawn therefrom, the case must be submitted to the jury. Clark and Williams v. Compania Ganadera, etc., 94 Ariz. 391, 385 P.2d 691.

■ During the seven-year interval, the parties and their attorneys exchanged considerable correspondence. An examination of the correspondence in evidence discloses that the buyers made repeated demands which were different and beyond the terms of the original contract and to which the sellers never assented. For instance, in a letter written to Mr. Heim dated December 3, 1951, Allen stated, "Please understand that title to property must be to that property which was originally purchased and *we shall expect a title policy insuring the title.*" On August 21, 1952, Allen wrote to Gilmore, the sellers' attorney, as follows: *"but we require that you pay for the cost of the survey aerial* if possible so that we can be sure that the property we purchased together with the additional land tendered by separate deed are adjoining and can be used as one parcel." There was an approximate two-year period between August 18, 1953 and July 22, 1955 during which the buyers did not negotiate further with the sellers. On the latter date the buyers' attorney wrote Gilmore and stated "I know that a number of questions, such as insurance, taxes, interest, escrow fees and the title insurance policy premium are going to enter into this matter and we would like to get the ball rolling toward the completion of the escrow if at all possible." At no time did the buyers ever agree to perform in accordance with the written contract until the filing of the lawsuit.

The buyers contend that the sellers, by their course of conduct, waived the "time is of the essence" clause of the contract; that they were required to reinstate such clause and allow a reasonable time thereafter within which to make the payments; and that since there was no reinstatement, the sellers cannot therefore assert the forfeiture. We do not agree. As stated supra, the contract terminated ipso facto upon the buyers' failure to make the payments punctually and all negotiations subsequent thereto did not operate to revive the contract except on the sellers' condition that the buyers pay according to the terms of the original contract.

We conclude that the buyers' equities in the property were terminated for failure to pay the balance of the purchase price. The sellers were not required to provide a specific notice of termination, the contract failing because of nonperformance. This is not a case where equity is enforcing a forfeiture, but rather declining to relieve against one where no equitable grounds for relief exist. Glad Tidings Church of America v. Hinkley, 71 Ariz. 306, 226 P.2d 1016. The lower court properly denied appellants relief and correctly quieted title in appellees.

Judgment affirmed.

LOCKWOOD, V. C. J., and STRUCKMEYER, J., concur.