[Civ. No. 45832. First Dist., Div. Three. Jan. 28, 1981.]

EILEEN M. KOSLOFF, Plaintiff, Cross-defendant and Respondent, v. CATHRYN A. CASTLE, Defendant, Cross-complainant and Appellant.

370

**COUNSEL**

Maxwell, Allen & Cooper, Malcolm T. Manwell and David S. Cooper for Defendant, Cross-complainant and Appellant.

Alexander Thiele for Plaintiff, Cross-defendant and Respondent.

## OPINION

**BARRY-DEAL, J.**—This appeal arises out of a dispute over real property in Sonoma County. After a nonjury trial, the court granted recovery to respondent on her complaint to quiet title and recover possession and denied recovery to appellant on her cross-complaint for specific performance.

Appellant contends that a willfully defaulting vendee under an installment land contract is legally entitled to an equity of redemption, i.e., that she should have been allowed to reinstate the contract and tender full performance. She also maintains that an installment land contract is in fact a mortgage under Civil Code section 2924, giving a right of redemption to mortgagors. (Civ. Code, § 2924c.)

### THE FACTS

For the most part the facts are not disputed. In 1966, respondent purchased a home in Sonoma County for $15,000 which she rented to appellant in 1970 for $150 per month. Appellant continued to rent the house at that rate for the next three years. On July 1, 1973, the parties entered into a written agreement for the sale of the property to appellant for $15,000. The purchase price was payable in installments of $150 per month for two years, and the balance of $11,400 in a single balloon payment was due on or before July 1, 1975. There was no provision for interest. The respondent would retain title to the property until the final payment was made, and appellant would forfeit her interest in the property if she breached the contract. In the event of a breach appellant's monthly payments would be deemed rental payments for the use of the property. Time was of the essence.

From July 1, 1973, until April 1976, appellant paid $114 per month directly to the lending institution for the monthly loan installment and impound account and remitted the balance of $36 to respondent. Appellant failed to tender the balloon payment of $11,400 on July 1, 1975, when due. From May 1976 through January 1977, she paid a reduced monthly amount of $98.77 to the lending institution and continued to remit $36 to respondent. From February 1977 through September 1977

appellant paid only the $98.77 and failed to make any payments to respondent; after suit was filed, appellant paid to respondent $288, representing the $36 per month for this latter eight-month period. From December 1976 through February 1978, appellant paid directly to the county treasurer three installments totalling $808 on property taxes.

Respondent took no steps to enforce payment of the $11,400 until December 15, 1976, at which time respondent's attorney informed appellant by letter that her rights under the contract had terminated. Respondent served appellant with a notice to quit in April 1977 and filed an action for unlawful detainer and to quiet title in August 1977.

In September of 1977, appellant tendered the amount of $9,372.72 which sum represented the $11,400 minus the payments made from July 1975 to September 1977, with an allowance for interest on the $11,400. The offer was refused.

Over appellant's objections, the court found that respondent believed, following the breach of contract, that appellant had once again assumed the role of tenant. The court also found that the value of the property at the time of the contract was $20,000 to $22,000 and that the reasonable rental in April 1977 was $200 per month.

## Appellant's Right to Specific Performance

It is agreed that the parties to this dispute entered into a form of sales agreement known as an installment land contract.[1] Commentators have pointed out that the installment land contract, where used to secure the price of property, is functionally similar to a deed of trust or a mortgage. (Hetland, Cal. Real Estate Secured Transactions (Cont.Ed. Bar 1970) § 3.42, p. 80; 1 Miller & Starr, *supra*, pt. 2, § 5.15, p. 116.)

---

[1] This type of real estate contract is also referred to as "installment contract," "contract of sale," "agreement of sale," "land contract," "installment land sale contract," or "real property sales contract" and is distinguishable from the real estate contract used as a "marketing" device which often takes the form of a "deposit receipt," "earnest money contract," or escrow instructions. (See 1 Miller & Starr, Current Law of Cal. Real Estate (1975) pt. 1, § 5.15, pp. 115-117.) Civil Code section 2985 defines a "real property sales contract" as "an agreement wherein one party agrees to convey title to real property to another party upon the satisfaction of specified conditions set forth in the contract and which does not require conveyance of title within one year from the date of the formation of the contract." (See also Bus. & Prof. Code, § 10029.)

Along with the mortgage and deed of trust, the Legislature has categorized the installment land contract as a security instrument in the subordination legislation (Civ. Code, § 2953.1), and as a security device within the purchase-money anti-deficiency limitation of Code of Civil Procedure section 580b. It is appellant's contention that an installment land contract used as a security device is a "mortgage" under Civil Code section 2924 and that she should have the relief available to a mortgagee.

The trend has been toward judicial recognition that where the installment land contract is used as a security device, it is for all intents and purposes a mortgage; the total judicial equation of the two, however, has never been completed. (Hetland, Cal. Real Estate Secured Transactions (Cont.Ed.Bar 1974 Supp.) §§ 2.1-2.2, pp. 45-47 (hereafter Hetland Supp.).) Nevertheless, it is upon this trend in the California cases that appellant relies in arguing that she should have been afforded the same equity of redemption guaranteed the mortgagor (Civ. Code, § 2924c) and been allowed to reinstate the contract and tender full performance.

Until 1949, the courts, in the absence of waiver or estoppel, applied a fairly harsh forfeiture rule to land contracts by quieting the seller's title without restitution or the right of reinstatement (specific performance) for the buyer. In *Barkis* v. *Scott* (1949) 34 Cal.2d 116 [208 P.2d 367], the California Supreme Court initiated reform in this area with its finding that the antiforfeiture provision of Civil Code section 3275 applied to protect a nonwillfully defaulting vendee, despite the fact that the contract provided that time was of the essence. *Barkis* v. *Scott* established the innocently defaulting buyer's entitlement to his choice of restitution or reinstatement.

Shortly thereafter, the court held that relief from forfeiture was available not only under Civil Code section 3275, but also under those sections of the Civil Code prohibiting punitive and limiting liquidated damages, for the first time granting relief in the form of restitution to a willfully defaulting vendee. (*Freedman* v. *The Rector* (1951) 37 Cal.2d 16 [230 P.2d 629, 31 A.L.R.2d 1].) As the property in that case had been sold to a third party, specific performance was not an available remedy. (*MacFadden* v. *Walker* (1971) 5 Cal.3d 809, 814 [97 Cal. Rptr. 537, 488 P.2d 1353, 55 A.L.R.3d 1].)

In *MacFadden* v. *Walker, supra*, the remedy of specific performance was extended to a willfully defaulting vendee. As articulated by the

court, the question presented was "whether failure to qualify for relief from forfeiture under section 3275 precludes the right to specific performance." (*MacFadden, supra*, at p. 813.) The court thought not. "We believe that the anti-forfeiture policy recognized in the *Freedman* case also justifies awarding even wilfully defaulting vendees specific performance *in proper cases.*" (*Id.* at p. 814, italics added.) In arriving at its decision the court took note of "Professor Hetland's [Hetland, *supra*, §§ 3.58-3.81, pp. 100-134] persuasive arguments that installment land contracts should be treated as security devices substantially on a par with mortgages and deeds of trust, and that therefore 'the law governing those security devices should be adopted with appropriate modifications in determining the remedies for breaches of installment contracts.' [Citations.] That law affords even the willfully defaulting debtor an opportunity to cure his default before losing his interest in the security. [Citations.]" (*Id.*, at p. 816.) The court declined, however, to decide whether the law governing security transactions was applicable. (*Ibid.*)

Although a few cases have endorsed the implication of the *MacFadden* case that an installment land contract in California would be afforded the same legal treatment as a mortgage, no case has officially completed the judicial reform embarked upon in *Barkis* and so held. (See *Nash* v. *Superior Court* (1978) 86 Cal.App.3d 690, 697 [150 Cal.Rptr. 394]; *Kudokas* v. *Balkus* (1972) 26 Cal.App.3d 744, 756 [103 Cal.Rptr. 318]; *Newhouse* v. *Upchurch* (1971) 22 Cal.App.3d 204, 212 [99 Cal.Rptr. 436].) Notable writers in the area continue to urge the need for reform. (See Hetland Supp., *supra*, § 2.12, at pp. 59-61; Miller & Starr, *supra*, pt. 2, § 5.15, fn. 2, pp. 116-117.)

Contrary to appellant's assertion, the cases have stopped short of affording the defaulting land purchaser an absolute right of redemption. An exhaustive annotation to the *MacFadden* case examines decisions from numerous jurisdictions and indicates some of the equities to be weighed on both sides: the duration or recurrent nature of the defaults, substantial part performance or improvements made by the purchaser, acceptance of late payments and failure on the part of the vendor to act promptly in declaring a forfeiture. (Annot. (1974) 55 A.L.R.3d 10.) In most cases, in spite of forfeiture and time-of-essence clauses in the contract, courts will grant specific performance to the defaulting vendee where the equities are in his or her favor and where tender of full performance by the purchaser gives the vendor the benefit of his or her bargain. (*Id.*, at pp. 16-17.)

It should be noted that waiver as urged by appellant as a defense, while perhaps once grasped at by courts to avoid the harsh forfeiture rule prior to *Barkis* v. *Scott, supra*, 34 Cal.2d 116 (see *Boone* v. *Templeman* (1910) 158 Cal. 290 [110 P. 947]), seems now to be only one of many factors to be considered in weighing the seller's and buyer's equities.

The case chiefly relied upon by appellant to support her position that she is entitled to an unqualified right of redemption is *MacFadden* v. *Walker, supra*, 5 Cal.3d 809. The facts in *MacFadden* are in some respects those of the instant case. The parties entered into a written installment land contract, containing both a time-of-essence and a forfeiture clause. The contract also provided that timber was not to be removed from the land without the consent of the seller. All installments were paid for a period of 10 years, until the buyer discovered that timber had been cut and taken from the property without her knowledge. At the time of her default, the buyer had paid $2,500; a balance of $1,174.70 was owing. The seller allowed some two and one-half years to pass before enforcing his right to return of the property by a quiet title action. The buyer was allowed to reinstate the contract and tender the balance owing.

Weighing of equities is apparent in the *MacFadden* case, the court noting that specific performance involves an equitable remedy, that the vendor must be assured of receiving the benefit of his bargain, and that the defenses of laches and unclean hands may be applied against the defaulting vendee. (*MacFadden, supra*, at p. 815.) The court found the contract in *MacFadden* to be just and reasonable and the consideration adequate; the seller was assured of receiving the benefit of his bargain. There was substantial part performance, the buyer having paid over half of the purchase price prior to her default. Although the default in that case was willful, the buyer had believed herself justified in withholding the payments. As in the instant case, the default was lengthy—over two years, but the court felt that the delay was equally the responsibility of the seller who had taken no action to secure the return of his property upon the default of the buyer.

Language of the court emphasized previously should be again noted to the effect that specific performance may be granted to willfully defaulting vendees "in proper cases" (*id.*, at p. 814), i.e., not in all cases. Cases cited by appellant which appear to afford the buyer a right to reinstatement—*Petersen* v. *Ridenour* (1955) 135 Cal.App.2d 720 [287

P.2d 848]; *Scarberry* v. *Bill Patch Land & Water Co.* (1960) 184 Cal.App.2d 87 [7 Cal.Rptr. 408]; *Williams Plumbing* v. *Sinsley* (1975) 53 Cal.App.3d 1027 [126 Cal.Rptr. 345]—involve nonwillfully defaulting buyers to whom different rules have traditionally been applied. (See *Barkis* v. *Scott, supra*, 34 Cal.2d 116.)

Confusion is engendered in the briefs of both parties to this appeal by their indiscriminate use of the word "forfeiture." In some cases the forfeiture will be of installments paid prior to the time of default (see *Freedman* v. *The Rector, supra*, 37 Cal.2d 16); in other cases the forfeiture will be of the loss of the benefit of the buyer's bargain (see *MacFadden* v. *Walker, supra*, 5 Cal.3d 809). There is an unqualified right to relief from forfeiture of the buyer's installment payments made over and above the damages sustained by the seller, i.e., restitution. There is only a discretionary right to relief from forfeiture of the buyer's benefit of the bargain contingent upon the equities of the particular case, i.e., specific performance. There is no support for respondent's assertion that appellant's right to reinstatement is dependent upon her right to restitution.

█ It is obvious from its memorandum of intended decision that the trial court weighed the equities in this case and concluded that they did not favor appellant's reinstatement of the contract. The trial court found that appellant's continuing failure to pay the $11,400 subsequent to July 1975 was a willful and grossly negligent breach of contract. During the more than two years in which appellant was in default, she often did not even make the $150 payments required under the contract. There was no evidence of improvement to the property, which had in fact fallen into a state of disrepair. With regard to respondent's delay in enforcing her rights, the court found that it was reasonable under the circumstances for respondent to have believed that upon appellant's failure to make the balloon payment their relationship reverted to that of landlord-tenant. No restitution was owing in this case where the monthly installments were no more than the equivalent of the rental value of the property. Thus there was no forfeiture of partial payment in this case.

The court properly weighed the equities of which there was substantial evidence to justify the trial court's decision that "It is just and equitable to enforce the terms of the land sale contract as set forth."

Appellant urges us to complete the land sale reform initiated by *Barkis* v. *Scott, supra*, 34 Cal.2d 116, and ending prematurely with *MacFadden* v. *Walker, supra*, 5 Cal.3d 809, by today holding that the land sale contract is a mortgage under Civil Code section 2924. That section states in part that, "Every transfer of an interest in property, other than in trust, made only as a security for the performance of another act, is to be deemed a mortgage ...." If we were to so hold, appellant would then be entitled to a right of redemption under Civil Code section 2924c. One of the area's foremost commentators argues persuasively for appellant's position. (Hetland Supp., *supra*, § 2.12, at pp. 59-61.)

We decline to hold that the agreement in the case before us is a mortgage as defined in Civil Code section 2924. We believe that any reform in this area is more appropriately initiated by the Legislature which is in a better position to effect and coordinate comprehensive answers to the many-faceted questions that such a determination would evoke. It recently effected such an overhaul in the area of liquidated damages. (Civ. Code, §§ 1761, 1675-1681.) It specifically excepted the real estate contract from those provisions (Civ. Code, § 1681), incidentally indicating that it is not unaware of the independent existence of this type of contract.

The judgment is affirmed.

White, P. J., and Scott, J., concurred.

A petition for a rehearing was denied February 27, 1981, and appellant's petition for a hearing by the Supreme Court was denied May 27, 1981. Taylor, J.,* and Caldecott, J.,* participated therein. Bird, C. J., Tobriner, J., and Mosk, J., were of the opinion that the petition should be granted.

---

*Assigned by the Chairperson of the Judicial Council.