678 P.2d 1163

**Delfino MARTINEZ and Eleanor Martinez, as husband and wife, Petitioners-Appellees,**

v.

**Sennie A. MARTINEZ and Carlos Martinez, Respondents-Appellants.**

No. 14705.

Supreme Court of New Mexico.

March 12, 1984.

Robert M. Strumor, Strumor & Gonzales, Santa Fe, for petitioners-appellees.

Sarah M. Singleton, Ann Yalman, Santa Fe, for respondents-appellants.

## OPINION

WALTERS, Justice.

Sellers, under a real estate contract, brought an action against the buyers to recover title to and possession of the property which is at issue in this case. Following judgment for the vendors, defendant Sennie Martinez appealed, raising three issues: (1) whether delivery of the warranty deed was unconditional and, if so, whether the default provision of the real estate contract was merged into the warranty deed; (2) whether Sennie Martinez received proper notice of vendors' intent to exercise their option to repossess the real estate; and (3) whether the trial court's award of attorney fees was proper. We affirm in part and reverse in part.

In February, 1970, Delfino and Eleanor Martinez (Sellers) sold certain land, under a

real estate contract, to their son Carlos and his wife Sennie Martinez (Buyers). Carlos and Sennie agreed to assume the mortgage on the property, which then amounted to $8,580.34. Coincident with the execution of the real estate contract, the parents handed over to Carlos and Sennie a warranty deed. The trial court found that, while in the process of handing over the deed, Sellers orally instructed Carlos and Sennie to take the deed to the Southwest Savings and Loan Association (Southwest), the mortgagee, to be held in escrow until the mortgage had been paid in full. Before delivering the deed into escrow, either Carlos or Sennie recorded the deed. None of the documents contained written escrow arrangements or an escrow agreement by the parties.

Carlos and Sennie made payments of $119 per month through November 1980. At that time, because of marital difficulties,[1] Carlos informed Sennie that he no longer was going to pay any mortgage installments but that she would be solely responsible for them. In December, 1980, a representative of Southwest informed Sennie of her obligations under the mortgage and told her that, if the mortgage remained in default for ninety days, legal action would be taken to foreclose.

On February 9, 1981, Sennie made the mortgage payment for December, 1980. In late February, Southwest mailed notice only to Carlos, advising that if no further mortgage payments were received by March 25, the mortgage would be foreclosed. The court found that Sennie did not receive that letter until April 11. It concluded, however, that either when she visited Southwest in March and learned that a letter had been sent regarding delinquency and proposed legal action, or on April 11, or when she accepted service of the Petition for Repossession on June 9, 1981, Sennie had been put on "constructive and/or actual notice" of default and "imminent foreclosure proceedings."

Sennie did not make the January or February payments and, on March 27, Sellers cured the default and proceeded to make the monthly mortgage payments.[2] On April 11, 1981, Sennie received a letter from Sellers' attorney informing her that Sellers had taken over the mortgage payments and were exercising their option under the real estate contract to order her to reconvey the property to them. Similar notice was sent to Carlos. Carlos quitclaimed his interest in the real estate to Sellers; Sennie refused to do so. Sellers then brought this action against Sennie and Carlos. Sennie Martinez is the sole appellant contesting the trial court's decision in favor of Sellers.

### I. *Warranty Deed*

The trial court admitted extrinsic evidence of the Sellers' intent at the time the warranty deed exchanged hands and found that they intended the deed to be held in escrow until the mortgage had been paid in full. Appellant argues, citing *Wells v. Wells,* 249 Ala. 649, 32 So.2d 697 (1947), and *State v. Thom,* 58 Haw. 8, 563 P.2d 982 (1977), that delivery of a deed is conditional only if the condition is expressed in the deed, and that there can be no delivery in escrow when the deed is given by the grantor to the grantee. Thus, argues appellant, fee simple title passed to Carlos and Sennie in 1970. We disagree.

It is stated in 23 Am.Jur.2d *Deeds* § 123 (1983), that "[t]he intention of the parties is an essential and controlling element of delivery of a deed." 8 G. Thompson, Commentaries on the Modern Law of Real Property § 4229 (1963), declares that "[p]arol evidence is admissible to show that a deed delivered to the grantee named therein was not intended to take effect according to its terms * * * * There is no delivery where the deed is handed to the grantee to transmit to a depositary to hold in escrow."

---

1. Carlos and Sennie were divorced in March 1981.

2. Sellers have continued to make the mortgage payments throughout these proceedings.

It is well settled in New Mexico that the intent to transfer title is an essential element of delivery and that the intent may be determined from the surrounding circumstances. *Waters v. Blocksom*, 57 N.M. 368, 258 P.2d 1135 (1953). The Court of Appeals ruled in *Den-Gar Enterprises v. Romero*, 94 N.M. 425, 611 P.2d 1119 (Ct.App.) *cert. denied*, 94 N.M. 628, 614 P.2d 545 (1980), that "[t]here is no legal delivery, even where a deed has been physically transferred, when the evidence shows that there was no present intent on the part of the grantor to divest himself of title to the land." *Id.* at 428, 611 P.2d at 1122.

In this case both Delfino Martinez and Carlos Martinez testified that, at the time the warranty deed was handed over, Delfino directed that the deed be taken to Southwest to be held in escrow until the mortgage had been paid in full. The fact that the deed was first recorded by the grantees before depositing it with Southwest does not create an irrebuttable presumption of delivery. *See Wynne v. Pino*, 78 N.M. 520, 433 P.2d 499 (1967).

Findings of fact supported by substantial evidence will not be overturned on appeal. *Boone v. Boone*, 90 N.M. 466, 565 P.2d 337 (1977). There was substantial evidence in the record to support the trial court's findings and conclusion of conditional delivery of the warranty deed not as an instrument of conveyance, and of mistake and error in failure to prepare a special warranty deed. The conditional delivery prevented merger of the real estate contract and the warranty deed. Thus, the default and reconveyance provisions of the real estate contract were still in effect in April, 1981. *See Norment v. Turley*, 24 N.M. 526, 174 P. 999 (1918).

## II. *Adequate Notice*

The real estate contract provided, in pertinent part, as follows:

5. * * * * In the event of any default by the Buyers in the payment * * * [of the mortgage] whereby said real estate is in jeopardy of foreclosure proceedings, Sellers shall have the right to make such payments as may be required to forestall such foreclosure proceedings and to place said Mortgage Note on a current basis and, *at the option of Sellers* in such event, *Sellers may require of the Buyers a reconveyance of said real estate from the Buyers back to the Sellers.* (Emphasis added.)

In the letter from Sellers' attorney, received by Sennie on April 11, Sennie was informed that, pursuant to the real estate contract, Sellers were "exercising their option to require you as Buyers to reconvey said real estate back to them." The letter also stated that "[m]y clients are now lawful owners of said real estate under said real estate contract" and that "[n]otice is also hereby served upon you to vacate said premises immediately upon receipt of this letter."

The trial court concluded that the real estate contract was "fair and equitable * * [and] binding upon the parties" and that Sellers' April 9 letter constituted a valid exercise of their rights under the contract.

We recognize that real estate contracts containing notice and forfeiture provisions commonly are enforced. *Bishop v. Beecher*, 67 N.M. 339, 355 P.2d 277 (1960). As a general rule, a vendor has the right to treat a contract as at an end upon the vendee's default where time is of the essence. *Sturm v. Heim*, 95 Ariz. 300, 389 P.2d 702 (1964); *see also; Hansen v. Transamerica Insurance Co.*, 175 Mont. 273, 573 P.2d 663 (1978); *Cf. Kosloff v. Castle*, 115 Cal.App.3d 369, 171 Cal.Rptr. 308 (1981). However, time for compliance ordinarily is not of the essence of an agreement for the sale and purchase of land, *Bailey v. Savage*, 236 S.E.2d 203 (W.Va. 1977), and a reasonable time is generally implied unless the parties expressly make time of the essence in the contract. *Melfi v. Goodman*, 73 N.M. 320, 388 P.2d 50 (1963); *Bailey v. Savage*. This is "in consonance with the modern view that valuable contractual rights should not be surrendered or forfeitures suffered by a slight delay in performance unless such intention

clearly appears from the contract or where specific enforcement [upon the seller] will work injustice after a delayed tender." *Katemis v. Westerlind*, 120 Cal.App.2d 537, 543, 261 P.2d 553, 558 (1953).

In the case of an option to declare a forfeiture, such as was provided in the real estate contract under consideration, we adopt the following from *Howard v. Jackson*, 213 Or. 447, 460-61, 324 P.2d 757, 763 (1958):

> The contract of sale merely gave the vendor the option to declare a forfeiture and was not self-executing. [Citation omitted.] A forfeiture does not result automatically upon the occurrence of a default under a contract of sale which gives the vendor an option to declare a forfeiture or to exercise alternative rights. [Citation omitted.] The right to declare a forfeiture under such a contract may be exercised only when (1) the vendor first gives notice for a reasonable period of time, and (2) the purchaser fails to pay during the time fixed by such notice. A notice declaring that a forfeiture is then effected rather that [sic] stating that a forfeiture will be effected in the future unless payment is made within a prescribed time is a breach of the implied stipulation to give reasonable notice and does not effect a forfeiture.

Moreover, in view of our longstanding disapproval of forfeitures, *see Hale v. Whitlock*, 92 N.M. 657, 593 P.2d 754 (1979); *Stamm v. Buchanan*, 55 N.M. 127, 227 P.2d 633 (1951), we will not enforce the forfeiture of a real estate contract when to do so would work an unfairness which "shocks the conscience of the court." *Eiferle v. Toppino*, 90 N.M. 469, 565 P.2d 340 (1977); *Bishop v. Beecher*, 67 N.M. 339, 355 P.2d 277 (1960). .

In this case the trial court appears to have equated delinquency in the mortgage payments with default on the real estate contract. That does not necessarily follow. Although Buyers became delinquent in their *mortgage installments* when the December payment was not made, the *real estate contract* provided the remedy of reconveyance only when the mortgage had to be brought current in order to forestall foreclosure proceedings. In this case, that date was established by Southwest as March 25, 1981. We hold that the notice to Sellers on March 25 did not constitute notice to Sennie, and that notice to her of forfeiture on April 11th gave her *no* "reasonable time," *Melfi v. Goodman*, 73 N.M. 320, 388 P.2d 50 (1963); *see also Ott v. Keller*, 90 N.M. 1, 558 P.2d 613 (Ct.App.1976), for performance on the contract. Nor did her former husband's acquiescence in his parents' demand for reconveyance suffice to destroy her community property interests in the real estate contract. NMSA 1978, § 40-3-13 (Repl. Pamp.1983).

Although we understand the trade-offs involved when real estate is purchased by means of a real estate contract—vendees' risk of losing everything extrajudicially without a right of redemption, in return for the benefit of buying a home with small down payments and modest installments over a period of time, *see Bishop v. Beecher*—we are not compelled in every case to enforce a real estate contract when fairness and legal principles dictate that we should not. Nor do we think that we undermine the "market" for real estate contracts when we so rule in such cases. In this case payments of $119 per month had been made for over ten years on the remaining $8500 balance of an existing mortgage. The real estate contract, drawn up by Sellers or their attorney, was silent regarding notice of default to the buyers or an opportunity for the buyers to cure a default. Sennie testified at trial that she had been saving the money necessary to reimburse Sellers for the payments made by them.

Sennie was given insufficient time from the time of notice of default on the real estate contract, at the earliest in late March and at the latest on April 11, to perform on the contract before it was declared forfeited. Under those circumstances, and based on the authorities we have

cited, we hold that Sennie was entitled to notice and a reasonable time of not less than thirty days thereafter to cure her default on the real estate contract prior to Sellers' declaration of forfeiture and demand for reconveyance.

### III. *Attorney Fees*

The trial court awarded $1200 in attorney fees to Sellers. Sennie argues that an award of attorney fees in this case is supported neither by statute nor by case law. Sellers contend that Sennie Martinez did not properly preserve the question for appeal because she failed to submit a requested finding on the issue and, additionally, that we should expand the holding in *Marron v. Wood,* 55 N.M. 367, 233 P.2d 1051 (1951), to allow attorney fees in this case.

▇▇▇ Sellers' first argument is without merit. NMSA 1978, Civ.P.R. 52(B)(2) (Repl.Pamp.1980). The court advised the parties of its decision by letter of September 14. Final judgment was entered on November 15, 1982. Earlier, on September 23, Sennie had moved that the trial court reconsider findings of fact and conclusions of law stated in the decision mailed to the parties. The motion specifically challenged the trial court's conclusion that Sellers should be awarded attorney fees. Sennie's motion was denied at a hearing held on October 29. Her failure to submit a specific requested conclusion of law on attorney fees prior to the trial court's letter is not fatal. We said in *N.H. Ranch Co. v. Gann,* 42 N.M. 530, 82 P.2d 632 (1938):

> The main function of an exception is to call the attention of the court to the error which it is thought has been committed in order that he may have an opportunity to reconsider it and correct it and avoid miscarriage of justice or a new trial. It would seem then that justice has been done if the party complaining has in some manner called the attention of the trial court to the claimed error.

*Id.* at 541, 82 P.2d at 639.

Sennie properly called the trial court's attention to the question of attorney fees and the trial court squarely considered that issue.

▇▇▇ Second, the award of attorney fees in this case is supported neither by statute nor by case law. In reversing the trial court's award of attorney fees, we adhere to the rule stated in *State v. Lujan,* 43 N.M. 348, 93 P.2d 1002 (1939), that each party to litigation must pay his own counsel fees. This case does not fall within any of the exceptions stated in *Gregg v. Gardner,* 73 N.M. 347, 388 P.2d 68 (1963), and we choose not to broaden the holding in *Marron* to include situations such as that presented in this case. Indeed, this case is more similar to *Aboud v. Adams,* 84 N.M. 683, 507 P.2d 430 (1973), in which the vendor sued the vendee for breach of contract and we held that the trial court's award of attorney fees to the vendor was error.

We reverse the judgment of the trial court and remand the case with the following instructions: The award of attorney fees shall be set aside. A determination shall be made of the exact amount Sellers have paid on the mortgage since January, 1981; Sennie Martinez shall have thirty days from the time that determination is made within which to reimburse Sellers; if she fails to make reimbursement within that time, Sellers may then exercise their option to forfeit the contract and demand that Appellant reconvey her interest.

IT IS SO ORDERED.

FEDERICI, C.J., and SOSA, J., concur.

RIORDAN and STOWERS, JJ., dissenting.

RIORDAN, Justice, dissenting.

I dissent from the majority opinion in this case. I believe that the trial judge's decision was correct and is supported by substantial evidence. Decisions of the trial court supported by substantial evidence will not be disturbed on appeal. *First National Bank of Santa Fe v. Wood,* 86 N.M. 165, 521 P.2d 127 (1974).